Filed 5/5/16

# IN THE SUPREME COURT OF CALIFORNIA

CATHERINE FLORES,                                )
                                                 )
            Plaintiff and Appellant,             )
                                                 )              S209836
        v.                                       )
                                                 )         Ct.App. 2/3 B235409
PRESBYTERIAN INTERCOMMUNITY                      )
HOSPITAL,                                        )
                                                 )          Los Angeles County
            Defendant and Respondent.            )       Super. Ct. No. VC058225
_____          )

A personal injury action generally must be filed within two years of the date on which the challenged act or omission occurred.  (Code Civ. Proc., § 335.1 (section 335.1).)  A special statute of limitations applies, however, to actions "for injury or death against a health care provider based upon such person's alleged professional negligence."  (Code Civ. Proc., § 340.5 (section 340.5).)  Unlike most other personal injury actions, professional negligence actions against health care providers must be brought within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."  (*Ibid*.)

Plaintiff in this case is a hospital patient who was injured when one of the rails on her hospital bed collapsed.  The rail had been raised according to doctor's orders following a medical assessment of her condition.  Plaintiff sued the hospital, claiming that it negligently failed to inspect and maintain the equipment.  The question presented is whether her claim is governed by the special limitations

1

period in section 340.5 or instead by the usual two-year statute of limitations for personal injury actions.  Because plaintiff's injury resulted from alleged negligence in the use and maintenance of equipment needed to implement the doctor's order concerning her medical treatment, we conclude that plaintiff's claim sounds in professional, rather than ordinary, negligence.  Therefore, as the trial court correctly ruled, the action is governed by the special limitations period in section 340.5 rather than the two-year statute of limitations under section 335.1.

**I.**

On March 5, 2009, plaintiff Catherine Flores, a patient at defendant Presbyterian Intercommunity Hospital (PIH Health) in Whittier, was attempting to get up from her hospital bed when the latch on the bedrail failed and the rail collapsed, causing her to fall to the floor.  Just under two years later, on March 2, 2011, she filed suit against PIH Health, stating causes of action for general negligence and premises liability.  She alleged that defendant had "failed to use reasonable care in maintaining [its] premises," "failed to take reasonable precautions to discover and make safe a dangerous condition on the premises," and "failed to give Plaintiff a reasonable and adequate warning of a dangerous condition so Plaintiff could have avoided foreseeable harm."  Flores claimed she suffered injury as a result.

PIH Health demurred to the complaint.  It argued that the complaint was governed by section 340.5's statute of limitations for suits alleging professional negligence, that Flores had discovered the injury when she fell out of her hospital bed, and that the complaint was untimely because it was filed more than one year thereafter.  In her briefs and argument in opposition to the demurrer, Flores disputed that her claim arose from professional negligence.  She acknowledged that a doctor had made a "medical decision" to order that the rails on her bed be raised, following a "medical assessment" of her condition.  But, she argued, "the

2

rendition of professional services ended when Defendant medically assessed Plaintiff's condition and medically determined to raise the sidewalls on her bed." PIH Health's alleged negligent conduct, she argued, was therefore "clearly ordinary, and not professional, negligence," and was therefore subject to the ordinary two-year limitations period for personal injury actions (§ 335.1). The trial court agreed with PIH Health, sustained the demurrer without leave to amend, and dismissed the lawsuit. Flores appealed.

The Court of Appeal reversed, ordering the trial court to reinstate the complaint. The Court of Appeal held that PIH Health's alleged failure to use reasonable care in maintaining its premises and its alleged failure to take reasonable precautions to make a dangerous condition safe "sounds in ordinary negligence because the negligence did not occur in the rendering of professional services."

We granted PIH Health's petition for review.

## II.

### A.

For most of the 20th century, medical malpractice claims were subject to the same one-year limitations period that applied to other personal injury claims. (See Code Civ. Proc., former § 340, subd. (3), added by Stats. 1905, ch. 258, § 2, p. 232; *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 181 (*Neel*); *Gopaul v. Herrick Memorial Hosp.* (1974) 38 Cal.App.3d 1002, 1005 (*Gopaul*).) But courts had held that in professional malpractice cases, unlike in ordinary personal injury actions, the limitations period did not begin to run "until the plaintiff discovered his injury, or through the use of reasonable diligence, should have discovered it." (*Stafford v. Shultz* (1954) 42 Cal.2d 767, 776; see *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, 96-97; *Huysman v. Kirsch* (1936) 6 Cal.2d 302.)

3

In 1970, the Legislature codified this delayed discovery rule in former section 340.5, which then applied to any action against specified medical professionals, or hospitals employing such professionals, "based upon such person's alleged professional negligence . . . or for error or omission in such person's practice." (§ 340.5, as added by Stats. 1970, ch. 360, § 1, p. 772.) In such cases, the Legislature provided that the statute of limitations was one year from the date on which the plaintiff discovered or should have discovered the injury, but was subject to an outer limit of four years after the date of injury. (*Ibid.*) The new law was intended "to retain the substance of the common law discovery rule, while modifying its 'open-ended' operation." (*Sanchez v. South Hoover Hospital*, *supra*, 18 Cal.3d at p. 98.)

Five years later, the Legislature amended section 340.5 to its present version as part of the Medical Injury Compensation Reform Act (MICRA) (Stats. 1975, 2d Ex. Sess. 1975-1976, chs. 1, 2, pp. 3949-4007), a wide-ranging statutory scheme designed to reduce the cost of medical malpractice insurance "by limiting the amount and timing of recovery in cases of professional negligence" (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 111; see Stats. 1975, 2d Ex. Sess. 1975-1976, ch. 2, § 12.5, p. 4007 [preamble to MICRA]). MICRA amended section 340.5 to shorten the outer limitations period from four years to three. It expanded the coverage of the provision to include not only actions against medical professionals and hospitals "as . . . employer[s]" of such persons (Code Civ. Proc., former § 340.5), but also actions against " '[h]ealth care provider[s],' " generally, which it defined to include any licensed "clinic, health dispensary, or health facility" (§ 340.5, subd. (1)). Finally, and as particularly relevant here, it amended the description of covered claims, stating that the special limitations period applies to "an action for injury or death against a health care provider based upon such person's alleged professional

4

negligence." (§ 340.5.)  MICRA also supplied, for the first time, a definition of the term "professional negligence":  "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."  (§ 340.5, subd. (2).)[1]

For many years after MICRA's enactment, its special limitations provisions were relevant only in cases involving delayed discovery; in all other cases, the one-year statute of limitations corresponded to the usual one-year statute of limitations for personal injury actions.  In 2002, however, the Legislature enacted section 335.1, which established a two-year limitations period for most tort actions alleging personal injury or death.[2]  Because all parties agree that Flores was aware

---

[1]     An identical definition appears in several other provisions of MICRA:  Civil Code section 3333.1 (evidence of collateral source payments allowed and subrogation by a collateral source precluded in professional negligence actions); Civil Code section 3333.2 (noneconomic damages in professional negligence actions capped at $250,000); Code of Civil Procedure section 364 (plaintiffs in professional negligence actions must give 90-day notice of intent to sue); Code of Civil Procedure section 667.7 (judges in professional negligence actions authorized to provide for periodic payments of future damages); and Business and Professions Code section 6146 (limiting contingent fees in professional negligence actions).  We have said that, "[t]o ensure that the legislative intent underlying MICRA is implemented, . . . the scope of conduct afforded protection under MICRA provisions (actions 'based on professional negligence') must be determined after consideration of the purpose underlying each of the individual statutes."  (*Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 192.)

[2]     The legislative findings accompanying the enactment of section 335.1 indicate that the Legislature was particularly concerned that, under the previous one-year statute of limitations, "residents of California who were victims of the

*(Footnote continued on next page.)*

5

of her injury at the time it occurred, the question in this case is whether her claim is subject to the two-year statute of limitations under section 335.1, in which case her claim was timely, or the one-year statute of limitations under section 340.5, in which case it was not.

**B.**

As our courts have long recognized, "the dividing line between 'ordinary negligence' and 'professional malpractice' may at times be difficult to place . . . ." (*Gopaul*, *supra*, 38 Cal.App.3d at p. 1007.)  Over time, the Courts of Appeal have drawn the line differently in cases involving alleged negligence in the use or maintenance of hospital equipment or premises.

In *Gopaul*, the court considered the proper characterization of such a claim under the law as it existed before the enactment of section 340.5.  (See *Gopaul*, *supra*, 38 Cal.App.3d at p. 1005, fn. *.)  The plaintiff in *Gopaul* was a hospital patient, later diagnosed with bronchial pneumonia, who fell from a gurney during a coughing fit while left unattended.  The specific question before the court was whether the plaintiff was entitled to the benefit of the judge-made "discovery rule" for cases of professional malpractice.  The *Gopaul* court held that the rule did not apply.  The court explained that not every negligent act by a professional is an act of professional negligence:  "No reasonable person would suggest that 'professional malpractice' was the cause of injury to a patient from a collapsing

*(Footnote continued from previous page.)*

terrorist actions of September 11, 2001, must prematurely choose between litigation and federal remedies, while residents of other states have more than twice as long to pursue their remedies." (Stats. 2002, ch. 448, § 1, subd. (c), p. 2522.)  The perhaps unintentional effect of the legislation was to create a longer limitations period for ordinary negligence actions than for professional negligence actions not involving delayed discovery of the injury.

chair in a doctor's office, or to a client from his attorney's negligent driving en route to the court house, or to a hospital patient from a chandelier falling onto his bed." (*Gopaul*, *supra*, 38 Cal.App.3d at p. 1006.) Rather, the court held, professional malpractice occurs only when "the negligence occurred within the scope of the 'skill, prudence, and diligence commonly exercised by practitioners of [the] profession.' " (*Id.* at p. 1007, quoting *Neel*, *supra*, 6 Cal.3d at p. 188.)

After MICRA was enacted, the Court of Appeal in *Murillo v. Good Samaritan Hospital* (1979) 99 Cal.App.3d 50 (*Murillo*) took a different approach. In *Murillo*, the court considered the application of section 340.5, as amended by MICRA, to a hospital patient's claim that she fell from her hospital bed while sedated after hospital employees negligently left the rails of her bed down during the night. Relying on *Gopaul*, the hospital argued that the patient's claim sounded in ordinary negligence rather than professional negligence, and thus was not subject to the delayed discovery rule of section 340.5. The *Murillo* court disagreed. Under section 340.5, it reasoned, "the test is not whether the situation calls for a high or a low level of skill, or whether a high or low level of skill was actually employed, but rather the test is whether the negligent act occurred in the rendering of services for which the health care provider is licensed." (*Murillo*, *supra*, 99 Cal.App.3d at p. 57.) The court explained that "the professional duty of a hospital . . . is primarily to provide a safe environment within which diagnosis, treatment, and recovery can be carried out. Thus if an unsafe condition of the hospital's premises causes injury to a patient, as a result of the hospital's negligence, there is a breach of the hospital's duty *qua* hospital." (*Id.* at pp. 56-57.) Because the patient's claim in that case involved the "hospital's duties to recognize the condition of patients under its care and to take appropriate measures for their safety," the court concluded the claim was "squarely one of professional negligence." (*Id.* at p. 56; see *Bellamy v. Appellate Department* (1996) 50

7

Cal.App.4th 797, 806-808 (*Bellamy*) [applying the *Murillo* test and concluding that section 340.5 applied to a patient's claim that she was injured when hospital employees negligently failed to set a brake on a rolling X-ray table or to hold the table in place]; see also *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 999, 1002, fn. 6 [noting that *Gopaul* and *Murillo* reached contrary results, but declining to decide which was correct].)

Although the Court of Appeal in this case recited *Murillo*'s rule that the governing test " 'is whether the negligent act occurred in the rendering of services for which the health care provider is licensed' " (italics omitted), the court disagreed with what it characterized as "*Murillo*'s dictum that a negligently maintained, unsafe condition of a hospital's premises which causes injury to a patient falls within professional negligence." The court emphasized that the "critical inquiry is whether the negligence occurred in the rendering of professional services." The court concluded that "Flores's complaint, which alleged she was injured 'when the bed rail collapsed causing plaintiff to fall to the ground,' sounds in ordinary negligence" because the inspection and maintenance of hospital equipment and premises does not constitute "the rendering of professional services."

### III.

As this case comes to us, the central point of dispute is whether negligence in the use or maintenance of hospital equipment or premises qualifies as professional negligence subject to the special statute of limitations in section 340.5. We begin, as in all cases of statutory interpretation, by examining the text of the statute. The definition of "professional negligence" in section 340.5 has four elements: (1) "a negligent act or omission to act by a health care provider in the rendering of professional services," (2) "which act or omission is the proximate cause of injury or wrongful death," (3) "provided that such services are

8

within the scope of services for which the provider is licensed," and (4) "which are not within any restriction imposed by the licensing agency or licensed hospital." (§ 340.5, subd. (2).) The parties do not dispute that three of the four elements are satisfied in this case. The controversy centers on the meaning of the first element, whether the negligent act or omission occurred "in the rendering of professional services."

Flores urges us to interpret the phrase "professional services" to mean "services involving a job requiring a particularized degree of medical skill." In her view, because the maintenance of hospital equipment and premises requires no "specialized education, training or skill" it cannot qualify as negligence "in the rendering of professional services (§ 340.5)." PIH Health, drawing on *Murillo*, counters that, under section 340.5, "the test is not whether the situation calls for a high or a low level of skill, or whether a high or low level of skill was actually employed, but rather the test is whether the negligent act occurred in the rendering of services for which the health care provider is licensed." (*Murillo*, *supra*, 99 Cal.App.3d at p. 57.) As amici curiae supporting the hospital point out, the statutory and regulatory licensing requirements for hospitals include general premises safety and maintenance requirements. (See, e.g., Cal. Code Regs., tit. 22, § 70837, subd. (a) ["The hospital shall be clean, sanitary and in good repair at all times. Maintenance shall include provision and surveillance of services and procedures for the safety and well-being of patients, personnel and visitors."].) According to PIH Health, any failure to use reasonable care in maintaining its equipment or premises occurs in the rendering of services for which it is licensed, and therefore sounds in professional, rather than ordinary, negligence.

In our view, neither party accurately captures the meaning of section 340.5: Flores's proposed rule is too narrow, while PIH Health's proposed rule is too broad. Flores is, of course, correct that the term "professional services," as it

9

relates to members of a profession, ordinarily is used to refer to " 'services . . . which can be judged against the skill, prudence, and diligence commonly possessed' " by other members of the profession. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1237 (*Lee*), quoting *Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 64; see *Gopaul*, *supra*, 38 Cal.App.3d at p. 1007 [the test for determining the existence of "professional malpractice" is "whether the negligence occurred within the scope of the 'skill, prudence, and diligence commonly exercised by practitioners of his profession' "].) Flores is also correct that in the health care context, the relevant professional service is medical care: that is, the medical diagnosis and treatment of patients. But this does not mean that section 340.5 applies only to those specific tasks that require advanced medical skills and training. A medical professional or other hospital staff member may commit a negligent act in rendering medical care, thereby causing a patient's injury, even where no particular medical skills were required to complete the task at hand. A hospital's negligent failure to prevent a patient from becoming separated from an oxygen ventilator, for example, occurs in the "rendering of professional services" (§ 340.5, subd. (2)), "regardless of whether separation was caused by the ill-considered decision of a physician or the accidental bump of a janitor's broom" (*Taylor v. United States* (9th Cir. 1987) 821 F.2d 1428, 1432). If a doctor has determined that a hospitalized patient's medical needs require a special diet, and the patient is injured because a hospital employee negligently gives the patient the wrong food, the hospital has inflicted injury in the rendering of professional services to the patient. And if hospital staff place a violently coughing patient on a gurney for X-rays, and the patient falls to the ground after the staff negligently

10

leave her unsecured while the film is developed, the hospital has caused injury in the rendering of professional services to the patient, even though fastening straps requires no special skill. (See *Bellamy*, *supra*, 50 Cal.App.4th 797.)[3]

We thus agree with PIH Health (and by extension, with the *Murillo* court) to this extent: Under section 340.5, "the test is not whether the situation calls for a high or a low level of skill, or whether a high or low level of skill was actually employed . . . ." (*Murillo*, *supra*, 99 Cal.App.3d at p. 57.) But we disagree with the remainder of the hospital's proposed rule. In our view, a hospital's negligent act or omission does not qualify as negligence "in the rendering of professional services" (§ 340.5, subd. (2)) merely because it violates a state licensing requirement to maintain the premises in "good repair" (Cal. Code Regs., tit. 22, § 70837, subd. (a)). Such a rule would collapse the first ("a negligent act or omission . . . in the rendering of professional services") and third ("within the scope of services for which the [health care] provider is licensed") parts of the statutory definition, thereby essentially reading out of the statute the independent requirement that the negligent act or omission must occur "in the rendering of professional services." (§ 340.5, subd. (2).) It would thus sweep in not only negligence in performing the duties that hospitals owe to their patients in the rendering of medical diagnosis and treatment, but negligence in performing the duties that hospitals owe to all users — including personnel and visitors — simply by virtue of operating a facility that is open to the public. (Cal. Code Regs., tit. 22, § 70837, subd. (a).) It would mean, for example, that section 340.5 would

---

**3**    To the extent *Gopaul*, *supra*, 38 Cal.App.3d 1002, reached a contrary conclusion under the law as it existed before the 1970 enactment of section 340.5, it sheds no light on the proper interpretation of the operative provisions of the statute currently in force.

11

apply to a visitor's action for injuries resulting from a custodian's negligence in leaving a broom on a hallway floor, or a doctor's action against the hospital for failure to place a warning sign on a wet, recently mopped floor.

The rule PIH Health urges would, in short, transform section 340.5's special rule for professional negligence — i.e., negligence in the rendering of medical care to patients — into an all-purpose rule covering essentially every form of ordinary negligence that happens to occur on hospital property. Had the Legislature intended to craft such a rule, it certainly could have done so. But it chose instead to write a narrower rule, both to cabin the operation of the delayed discovery rule that had formerly applied in professional malpractice cases and to address "skyrocketing malpractice premium costs . . . resulting in a potential breakdown of the health delivery system." (Stats. 1975, 2d Ex. Sess. 1975-1976, ch. 2, § 12.5, p. 4007 [preamble to MICRA].) Neither purpose would be served by extending the special limitations period of section 340.5 to cases involving ordinary negligence that happen to occur on hospital property.[4] The rule PIH Health urges would, in short, extend section 340.5 well beyond its intended scope.

The text and purposes underlying section 340.5 instead require us to draw a distinction between the professional obligations of hospitals in the rendering of

---

[4]    Indeed, at the time MICRA was enacted, such an expansion could well have been counterproductive. As noted above, the limitations periods established in section 340.5 as amended by MICRA (one year when the injury was or should have been immediately discovered; three years when discovery of the injury was delayed; and in some circumstances subject to tolling) were in all circumstances equal to or longer than the limitations period in actions for ordinary negligence (one year in all cases). To the extent that MICRA reflected legislative concerns about open-ended limitations periods and skyrocketing malpractice rates, those concerns would have counseled against treating a garden-variety negligence claim as a claim for professional negligence, since doing so could only work to lengthen — not shorten — the applicable limitations period.

medical care to their patients and the obligations hospitals have, simply by virtue of operating facilities open to the public, to maintain their premises in a manner that preserves the well-being and safety of all users. Our recent decision in *Lee*, *supra*, 61 Cal.4th 1225, lends support to this conclusion. The question in that case concerned section 340.5's neighboring provision imposing a one-year statute of limitations for "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services." (Code Civ. Proc., § 340.6, subd. (a) (section 340.6(a)).) We acknowledged in that case that the "statutory text does not by itself make clear whether the phrase 'arising in the performance of professional services' limits the scope of section 340.6(a) to legal malpractice claims or covers a broader range of wrongful acts or omissions that might arise during the attorney-client relationship." (*Lee*, *supra*, 61 Cal.4th at p. 1233.) We therefore proceeded to examine the Legislature's purpose in enacting section 340.6(a) in 1977: "to 'reduce[] the cost of legal malpractice insurance' and 'limit[] the open-endedness' of the various limitations periods," as well as to avoid evasion of the statute through artful pleading. (*Lee*, *supra*, 61 Cal.4th at p. 1234.) In light of the concerns that motivated its enactment, we concluded that section 340.6(a) is properly read to apply to claims that "depend on proof that an attorney violated a professional obligation in the course of providing professional services." (*Lee*, *supra*, 61 Cal.4th at pp. 1236-1237.)

In so holding, we rejected the argument that section 340.6(a) applies "to all forms of attorney misconduct, except actual fraud, that occur during the attorney-client relationship or entail the violation of a professional obligation." (*Lee*, *supra*, 61 Cal.4th at p. 1238.) Section 340.6(a), we explained, does not cover "services unrelated to the practice of law, such as concert promotion," or a "garden-variety theft" that "occurs while the attorney and the victim are discussing the victim's legal affairs." (*Lee*, *supra*, 61 Cal.4th at p. 1237.) Further, we

13

explained, the statute does not "necessarily apply whenever a plaintiff's allegations, if true, would entail a violation of an attorney's professional obligations," because the "obligations that an attorney has by virtue of being an attorney are varied and often overlap with obligations that all persons subject to California's laws have." (*Id*. at p. 1238 [offering as an example the professional rules barring sexual battery in the context of the attorney-client relationship].) The question, we said, is "whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation." (*Ibid.*)

Although *Lee* concerned a different statute of limitations, its analysis of the similarly worded statute of limitations governing actions against attorneys is instructive. Just as an attorney's obligations "often overlap with obligations that all persons subject to California's laws have" (*Lee*, *supra*, 61 Cal.4th at p. 1238), so do the obligations of hospitals. And just as an attorney's breach of a generally applicable obligation to avoid stealing from or physically harming his or her clients does not fall within section 340.6(a), so too, we conclude, an injury resulting from a hospital's breach of a generally applicable obligation to maintain its equipment and premises in a safe condition does not fall within section 340.5. Rather, the special statute of limitations for professional negligence actions against health care providers applies only to actions alleging injury suffered as a result of negligence in rendering the professional services that hospitals and others provide by virtue of being health care professionals: that is, the provision of medical care to patients.

Consistent with these considerations, we conclude that whether negligence in maintaining hospital equipment or premises qualifies as professional negligence depends on the nature of the relationship between the equipment or premises in question and the provision of medical care to the plaintiff. A hospital's negligent

14

failure to maintain equipment that is necessary or otherwise integrally related to the medical treatment and diagnosis of the patient implicates a duty that the hospital owes to a patient by virtue of being a health care provider.  Thus, if the act or omission that led to the plaintiff's injuries was negligence in the maintenance of equipment that, under the prevailing standard of care, was reasonably required to treat or accommodate a physical or mental condition of the patient, the plaintiff's claim is one of professional negligence under section 340.5.  But section 340.5 does not extend to negligence in the maintenance of equipment and premises that are merely convenient for, or incidental to, the provision of medical care to a patient.  Arguably every part of a hospital's plant would satisfy such a standard, since the medical care of patients is, after all, the central purpose for which any hospital is built.  (See *Murillo*, *supra*, 99 Cal.App.3d at p. 57.)  Even those parts of a hospital dedicated primarily to patient care typically contain numerous items of furniture and equipment — tables, televisions, toilets, and so on — that are provided primarily for the comfort and convenience of patients and visitors, but generally play no part in the patient's medical diagnosis or treatment.  Although a defect in such equipment may injure patients as well as visitors or staff, a hospital's general duty to keep such items in good repair generally overlaps with the "obligations that all persons subject to California's laws have" (*Lee*, *supra*, 61 Cal.4th at p. 1238), and thus will not give rise to a claim for professional negligence.  If, for example, a chair in a waiting room collapses, injuring the person sitting in it, the hospital's duty with respect to that chair is no different from that of any other home or business with chairs in which visitors may sit.  Section 340.5's special statute of limitations does not apply to a suit arising out of such an injury.

15

**IV.**

In this case, Flores's complaint alleges that she was injured when the latch on the rail on her hospital bed malfunctioned. Flores further alleges that PIH Health negligently failed to discover or repair the malfunctioning latch and negligently failed to warn her that it was not working properly. Although Flores's complaint does not describe precisely the events that led to the decision to raise her bedrail, we may consider factual concessions made in her briefs or at oral argument. (See *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 506, fn. 1.) As noted, in her brief and argument opposing PIH Health's demurrer, Flores explained that a doctor had made a "medical decision" to order that the rails on her bed be raised, that this order followed from a "medical assessment" of her condition, and she was thereafter injured when, "while grasping [the] rail and attempting to exit the bed, the siderail collapsed causing Plaintiff to fall to the floor and injure herself."

Flores thus alleges, in essence, that PIH Health failed to properly implement the doctor's order, which was based on a medical assessment of her condition, that the rails on her bed be raised. Flores's injuries therefore resulted from PIH Health's alleged negligence in the use or maintenance of equipment integrally related to her medical diagnosis and treatment. When a doctor or other health care professional makes a judgment to order that a hospital bed's rails be raised in order to accommodate a patient's physical condition and the patient is injured as a result of the negligent use or maintenance of the rails, the negligence occurs "in the rendering of professional services" and therefore is professional negligence for purposes of section 340.5. As a result, the trial court correctly determined that section 340.5 was the applicable statute of limitations, and the Court of Appeal erred in holding to the contrary.

16

## DISPOSITION

The judgment of the Court of Appeal is reversed.

**KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**

17

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Flores v. Presbyterian Intercommunity Hospital

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 213 Cal.App.4th 1386
**Rehearing Granted**

_____

**Opinion No.** S209836
**Date Filed:** May 5, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Yvonne T. Sanchez

_____

**Counsel:**

Edward W. Lloyd & Associates and Edward W. Lloyd for Plaintiff and Appellant.

Steven B. Stevens; Agnew & Brusavich and Tobin D. Ellis for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Fonda & Fraser, Fonda, Hester & Associates, Fonda & Associates, Peter M. Fonda, Kristen J. Heim and Rachael C. Kogen for Defendant and Respondent.

Dummit Buchholz & Trapp, Craig S. Dummit and Darren W. Dummit for Stanford Hospital and Clinics, Doctors Medical Center of Modesto, Doctors Hospital of Manteca, Community Hospital of Los Gatos, Doctors Hospital of Lakewood, Los Alamitos Hospital and Medical Center, Garfield Medical Center, Monterey Park Community Hospital, Valley Presbyterian Hospital, Integrated Healthcare Holdings, Prime Healthcare Management, Inc., Memorial Health Services, Universal Health Services, Inc., Sharp Healthcare and North American Health Care as Amici Curiae on behalf of Defendant and Respondent.

Cole Pedroza, Curtis A. Cole, Kenneth R. Pedroza and Matthew S. Levinson for California Medical Association, California Dental Association and California Hospital Association as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Edward W. Lloyd
Edward W. Lloyd & Associates
2900 Adams Street, #C130
Riverside, CA  92504
(951) 656-1203

Peter M. Fonda
Fonda & Associates
11900 Olympic Boulevard, Suite 810
Los Angeles, CA  90064-1046
(310) 553-3320

Kenneth R. Pedroza
Cole Pedroza
2670 Mission Street, Suite 200
San Marino, CA  91108
(626) 431-2787