Filed 3/8/23  Lashinsky v. Breda CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ASHLYN LASHINSKY, | D079538 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2019-00020386-CU-PA-NC) |
| JOSEPH BREDA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Affirmed.

Law Office of David W. Allor, David W. Allor and Birgit S. Dominguez for Plaintiff and Appellant.

Berman Berman Berman Schneider & Lowary, Stephanie Berman Schneider and Karen E. Adelman for Defendant and Respondent.

Appellant Ashlyn Lashinsky appeals the court's grant of summary judgment in favor of respondent Joseph Breda.[1] She contends the court erroneously applied the one-year statute of limitations for professional negligence under the Medical Injury Compensation Reform Act (MICRA; Code of Civil Procedure,[2] § 340.5) to her claim against Breda, a certified emergency medical technician (EMT), who crashed an ambulance and injured her as his passenger. She further argues that as a matter of public policy, the negligent operation of an ambulance should always be regarded as ordinary negligence. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts show that on April 18, 2017, Lashinsky and her husband took their minor child, who had suffered an asthma attack, to an urgent care facility in Oceanside. Several hours later, urgent care personnel required the child to be transferred to a children's hospital in San Diego for overnight medical care. Because the child was being transferred and not

---

[1] Lashinsky clarifies that she is the only appellant and Breda is the only respondent, as she settled with the other named defendant, Americare Medical Services Inc. (Americare). We therefore do not address matters relating to Americare's claim it was not liable for Breda's conduct under the doctrine of respondeat superior. Lashinsky's husband dismissed his loss of consortium cause of action without prejudice; therefore, he is no longer a plaintiff.

[2] Undesignated statutory references are to the Code of Civil Procedure. The Legislature enacted section 340.5 "in response to a medical malpractice insurance 'crisis,' which it perceived threatened the quality of the state's health care. [Citation.] . . . [It] includes a variety of provisions all of which are calculated to reduce the cost of insurance by limiting the amount and timing of recovery in cases of professional negligence." (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 111.)

discharged, urgent care personnel informed Lashinsky that the child required medical transport.

Breda was licensed to transport individuals by ambulance to medical facilities in connection with his employment. Lashinsky accompanied her child in the back of the ambulance. Lashinsky alleged she was told to sit on a bench but did not see seatbelts. As the ambulance took off, she asked if there was a seatbelt she could use. While driving through the urgent care facility's parking lot, Breda did not activate the ambulance's lights or siren. He struck a light pole. Lashinsky sustained injuries as a result of the impact.

On April 17, 2019, Lashinsky filed her initial complaint against Breda and Americare. In the operative second amended complaint, she alleged that Breda negligently operated the ambulance.

Breda moved for summary judgment, arguing MICRA barred Lashinsky's complaint, which was filed more than one year after she knew or should have known she was injured in the incident.

Lashinsky opposed the motion, arguing this incident did not implicate MICRA: "Breda breached his duty of care to drive in a reasonable manner when he accelerated the ambulance forward within the parking lot and then turned directly into a pole. At the time, he was not operating the vehicle with lights and sirens. Prior to driving the vehicle, he did not provide [Lashinsky or her child] with first aid nor any form of medical care. He was not responding to the scene of an accident nor was he called to provide first aid or medical care to anyone sick or injured. He was hired to simply drive [Lashinsky and her child] from one medical facility to another medical facility. Further, the duty of care that he breached, the duty to drive reasonably, was a duty of care that all drivers of motor vehicles owe to every person on the roadway and had nothing to do with first aid or medical care,

3

being a healthcare professional or a duty of care owed as a medical professional."

The trial court granted the motion, ruling that Breda was a health care provider under MICRA, and his alleged negligent conduct occurred while he was engaged in professional services that the urgent care facility required. It concluded Lashinsky's complaint was untimely under MICRA's one-year statute of limitations: "The undisputed evidence establishes that the accident occurred on April 18, 2017. Mrs. Lashinsky discovered her injuries at that time. Plaintiffs thus needed to bring their professional negligence cause of action by no later than April 18, 2018. They did not do so until April 17, 2019."

## DISCUSSION

### I. *Summary Judgment Standard of Review*

We review orders granting summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Village Nurseries, L.P. v. Greenbaum* (2002) 101 Cal.App.4th 26, 35.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "A defendant can meet this burden by 'prov[ing] an affirmative defense, disprov[ing] at least one essential element of the plaintiff's cause of action [citations], or show[ing] that an element of the cause of action cannot be established.' [Citations.] ' "[A] defendant moving for summary judgment based upon the assertion of an affirmative defense . . . 'has the initial burden to show that undisputed facts support each element of the affirmative defense.' " ' " (*Severin Mobile Towing, Inc. v. JPMorgan Chase Bank, N.A.*

4

(2021) 65 Cal.App.5th 292, 302.) Additionally, we review matters of statutory interpretation de novo. (*Kilker v. Stillman* (2015) 233 Cal.App.4th 320, 329.)

## II. *MICRA Statute of Limitations and Applicable Law*

As applicable here, MICRA's one-year statute of limitations applies: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be . . . one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury." (§ 340.5.)

Subdivision (1) of section 340.5 defines "health care provider" to include any person licensed or certified pursuant to various identified provisions of the Business and Professions Code and the Health and Safety Code, which included mobile intensive care paramedics when MICRA was enacted. (*Canister v. Emergency Ambulance Services, Inc.* (2008) 160 Cal.App.4th 388, 396-399 (*Canister*).)[3] Subdivision (2) defines "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (§ 340.5.)

---

[3] EMT's are now certified pursuant to Division 2.5 of the Health and Safety Code, Emergency Medical Services, which is not one of the portions of the Health and Safety Code identified in Code of Civil Procedure section 340.5, subdivision (1). However, Health and Safety Code section 1797.4 provides, "Any reference in any provision of law to mobile intensive care paramedics subject to former Article 3 (commencing with Section 1480) of Chapter 2.5. of Division 2 shall be deemed to be a reference to persons holding valid certificates under this division as an EMT-I, EMT-II, or EMT-P." (See *Canister, supra*, 160 Cal.App.4th at pp. 396-399, 402.)

5

In *Canister*, the court addressed whether EMT's are health care providers protected by MICRA, and whether negligence in operating an ambulance qualifies as professional negligence. (*Canister, supra,* 160 Cal.App.4th at p. 392.) The case involved a police officer accompanying an arrestee in the rear of an ambulance. The officer was injured when the ambulance hit a curb. A licensed EMT employed by the ambulance company was driving while another employee, also a licensed EMT, attended to the arrestee. The officer alleged the ambulance was driven negligently and neither employee had told him seatbelts were available. The issue on appeal was whether the trial court had erred in ruling the officer's negligence action was subject to MICRA's restrictions. The court held there was no error. (*Id.* at pp. 392-394.)

After concluding EMT's are health care providers under MICRA, the court in *Canister* held "the act of operating an ambulance to transport a patient to or from a medical facility is encompassed within the term 'professional negligence.' " (*Canister, supra*, 160 Cal.App.4th at p. 404.) Pointing to section 340.5, subdivision (2)'s definition of professional negligence, the court explained the "relevant test is not the degree of skill required, but whether the negligence occurred in the rendering [of] services for which a provider is licensed." (*Canister*, at p. 404.)

While acknowledging a person having "no special knowledge, skill or care as a member of the medical profession" may operate an ambulance, *Canister* stated that fact did not preclude a determination the employees in the case before it were "acting as health care providers in transporting the patient to a medical facility." (*Canister, supra*, 160 Cal.App.4th at p. 404.) *Canister* continued, "The EMS Act [Emergency Medical Services System and

6

the Prehospital Emergency Medical Care Personnel Act (Health & Saf. Code, § 1797 et seq.)] defines emergency medical services in terms of the services ' "utilized in responding to a medical emergency." ' [Citation.] Significantly, 'emergency' is defined as 'a condition or situation in which an individual has a need for immediate medical attention, or where the potential for such need is perceived by emergency medical personnel or a public safety agency.' [Citation.] Accordingly, 'emergency ambulance service' encompasses all services rendered by emergency ambulances, even if the ambulance is engaged in nonemergency interfacility transfers." (*Id.* at p. 405.)

Responding to the police officer's contention the statutory phrase "professional services" extended only to those services for which an EMT was licensed and the only services for which EMT's were licensed as professionals were medical services, *Canister* stated, "EMT's *are* licensed to provide transport to patients" and, in any event, professional services included "more than the distinct services that a health care provider is licensed to perform." (*Canister, supra*, 160 Cal.App.4th at p. 405.) *Canister* explained regulations promulgated by the Emergency Medical Services Authority, which was " ' "responsible for the coordination and integration of all state activities concerning emergency medical services" ' " (*id.* at p. 397), specifically provide that, during transport of the sick or injured, or during interfacility transfer, a certified EMT is authorized to "[t]ransport patients." (*Id.* at p. 405.) *Canister* concluded an EMT's alleged negligence in operating an ambulance qualifies as professional negligence "when the EMT is rendering services for which he or she is licensed or when a claim for damages is directly related to the provision of ambulance services by the EMT." (*Id.* at p. 407.) Finally, *Canister* concluded the fact the officer was not a patient did not affect MICRA's applicability: "By their terms, MICRA statutes apply to negligent

7

conduct by a health care provider in the rendering of professional services and is not limited to actions by the recipient of professional services," citing, among other cases, *Hedlund v. Superior Court* (1983) 34 Cal.3d 695, 704. (*Canister*, at p. 407.)

As the *Canister* court explained, whether or not an EMT is specially licensed to drive an ambulance, the regulations governing the basic scope of practice for EMT's expressly include transporting patients. (Cal. Code Regs., tit. 22, § 100063, subd. (a)(8)(J) ["(a) During training, while at the scene of an emergency, during transport of the sick or injured, or during interfacility transfer, a certified EMT or supervised EMT student is authorized to do any of the following: [¶] . . . [¶] (8) Provide initial prehospital emergency care to patients, including, but not limited to: [¶] . . . [¶] (J) Transport patients"]; see *Canister, supra*, 160 Cal.App.4th at p. 406.)

The California Supreme Court in *Flores v. Presbyterian Intercommunity Hospital* (2016) 63 Cal.4th 75 (*Flores*) addressed "whether negligence in the use or maintenance of hospital equipment or premises qualifies as professional negligence subject to the special statute of limitations in section 340.5." (*Flores, supra,* at p. 84.) The plaintiff was a patient of the defendant hospital. (*Id.* at p. 79.) After evaluating the plaintiff's medical condition, her doctor ordered that her bedrail be raised. (*Ibid.*) The latch on the bedrail failed and the rail collapsed, causing the plaintiff to fall to the floor. (*Ibid.*) Less than two years later, the plaintiff sued the defendant hospital for general negligence and premises liability. (*Id.* at pp. 79-80.) The trial court sustained the defendant hospital's demurrer, finding that the plaintiff's action was not filed within the one-year limitations period for professional negligence actions under section 340.5. (*Flores*, *supra*, at p. 80.) The Court of Appeal reversed, concluding the

8

defendant hospital's "alleged failure to use reasonable care in maintaining its premises and its alleged failure to take reasonable precautions to make a dangerous condition safe 'sounds in ordinary negligence because the negligence did not occur in the rendering of professional services.' " (*Ibid.*)

The California Supreme Court rejected both the plaintiff's argument that "professional services" as used in section 340.5, subdivision (2) means " 'services involving a job requiring a particularized degree of medical skill' " (*Flores*, *supra*, 63 Cal.4th at p. 84), and the defendant hospital's argument that "any failure to use reasonable care in maintaining its equipment or premises occurs in the rendering of services for which it is licensed, and therefore sounds in professional, rather than ordinary, negligence" (*id.* at p. 85).

The Supreme Court held that the applicable statute of limitations in a particular case is determined by considering whether the negligently maintained equipment is related to medical care: "[W]e conclude that whether negligence in maintaining hospital equipment or premises qualifies as professional negligence depends on the nature of the relationship between the equipment or premises in question and the provision of medical care to the plaintiff. A hospital's negligent failure to maintain equipment that is necessary or otherwise integrally related to the medical treatment and diagnosis of the patient implicates a duty that the hospital owes to a patient by virtue of being a health care provider. Thus, if the act or omission that led to the plaintiff's injuries was negligence in the maintenance of equipment that, under the prevailing standard of care, was reasonably required to treat or accommodate a physical or mental condition of the patient, the plaintiff's claim is one of professional negligence under section 340.5. But section 340.5 does not extend to negligence in the maintenance of equipment and premises

9

that are merely convenient for, or incidental to, the provision of medical care to a patient." (*Flores, supra*, 63 Cal.4th at pp. 88-89.)

Applying its analysis to the facts in that case, the Supreme Court in *Flores* concluded that section 340.5's statute of limitations applied to the plaintiff's claims because the plaintiff's doctor had ordered that the rail on her bed be raised based on a medical assessment of her condition. (*Flores, supra*, 63 Cal.4th at p. 89.) Because the negligence in the maintenance or use of the bedrail was integrally related to the plaintiff's medical diagnosis and treatment, the negligence occurred " 'in the rendering of professional services' " and was subject to the statute of limitations set forth in section 340.5, subdivision (2). (*Flores*, at p. 89.)

III. *Lashinsky's Lawsuit Is Barred by the Section 340.5 Statute of Limitations*

MICRA is limited to claims arising from "*professional* services," and even then only "such services . . . for which the provider is licensed." (§ 340.5, subd. (2), italics added; *Aldana v. Stillwagon* (2016) 2 Cal.App.5th 1, 8.) Here, Breda's EMT license complies with that provision.

That the actual driving of the ambulance, like the maintenance of a hospital bed rail, may not require any special medical knowledge or skill does not mean Lashinsky's claim falls outside the ambit of section 340.5. (See *Flores, supra*, 63 Cal.4th at pp. 85-86; see also *Mitchell v. Los Robles Regional Medical Center* (2021) 71 Cal.App.5th 291, 298 [section 340.5 applied to personal injury action brought by emergency room patient who fell when allowed to walk to the restroom unattended; "[w]e recognize that accompanying someone to the restroom is not a sophisticated medical procedure. But that is not determinative. Section 340.5 applies to more than tasks that 'require advanced medical skills and training' "].) Breda's allegedly negligent driving occurred in executing a medical service deemed

10

necessary or integrally related to Lashinky's child's care. The child's transportation by ambulance was required by the urgent care facility. Lashinsky was injured as a result of Breda's alleged negligence. Her lawsuit thus comes within the ambit of section 340.5, consistent with the holdings of both *Flores, supra*, 63 Cal.4th 75 and *Canister, supra*, 160 Cal.App.4th 388.

Lashinsky argues *Canister, supra*, 160 Cal.App.4th 388 sweeps too broadly and that its holding was rejected by *Flores*. Breda points out that *Flores* did not mention *Canister*. *Flores* holds that under section 340.5, "the special statute of limitations for professional negligence actions against health care providers applies only to actions alleging injury suffered as a result of negligence in rendering the professional services that hospitals and others provide by virtue of being health care professionals: that is, the provision of medical care to patients." (*Flores, supra,* 63 Cal.4th at p. 88.) Applying the analysis and conclusion of *Flores* to this case, we conclude that the alleged negligence in driving the ambulance in which Lashinsky was injured was integrally related to the child's medical diagnosis or treatment. The transfer must have been made subject to a medical professional's directive. Therefore, the negligence occurred in the rendering of professional services, and the one-year statute of limitations in section 340.5 applied. There are no disputed issues of material fact as to the date on which Lashinsky's injury occurred, or that the complaint was filed more than one year later. Her claims are barred by the applicable statute of limitations, and the trial court properly granted the summary judgment motion. We reject Lashinsky's claim that *Flores* rejected *Canister*. "Cases do not stand for propositions that were never considered by the court." (*Mares v. Baughman* (2001) 92 Cal.App.4th 672, 679.)

11

Lashinsky's reliance on *Aldana v. Stillwagon, supra,* 2 Cal.App.5th 1 and *Johnson v. Open Door Community Health Centers* (2017) 15 Cal.App.5th 153 (*Johnson*) is unavailing.

In *Aldana*, the defendant, an on-duty paramedic supervisor responding to a 911 call, was driving his employer's pickup truck, which had an emergency vehicle permit but could not transport patients, to the location of an injured victim to supervise the responding EMT's and provide any necessary assistance. En route, the supervisor failed to make a complete stop at a red light and collided with the plaintiff's vehicle. (*Aldana v. Stillwagon, supra*, 2 Cal.App.5th at pp. 4-6.) The court held driving to the third party victim did not constitute "professional services" and questioned whether *Canister*'s conclusion that the EMT driving the ambulance was rendering professional services remained good law after *Flores*. (*Aldana,* at p. 7.)

We acknowledge *Aldana*'s critique of *Canister*, and recognize that depending on the circumstances, driving an ambulance might not be health care or professional services within the meaning of MICRA if it does not relate to executing a medical service deemed necessary or integrally related to patient care. But here, MICRA applied because Breda was engaged in rendering professional medical services when he was transporting the patient to a hospital, an activity for which he was certified and which was "inextricably identified" with the health of patients. (See *Canister, supra*, 160 Cal.App.4th at p. 403; cf. *T.L. v. City Ambulance of Eureka, Inc.* (2022) 83 Cal.App.5th 864, 879 [there is no question defendants, an EMT and a paramedic, "were providing a medical support service" in transporting plaintiff by ambulance from a crisis stabilization unit to an inpatient psychiatric facility].) Indeed, the *Aldana* court distinguished the case before

12

it from *Canister* because it did not involve transporting a patient. (*Aldana v. Stillwagon, supra*, 2 Cal.App.5th at pp. 7-8.)

In *Johnson, supra*, 15 Cal.App.5th 153 the plaintiff, after a consultation at a health clinic, tripped on a scale partially blocking her path from a treatment room to the hall as she headed for the exit. Because the plaintiff was injured "after her care was completed, allegedly as a result of a breach of duties owed generally to all visitors to the [ ] clinic," the Court of Appeal held section 340.5 did not govern the action. (*Id.* at p. 160.) In reaching its conclusion the court summarized several pre-*Flores* cases, including *Canister*, and determined, to the extent still good law, they did not support application of section 340.5 to the case before it. Although stating *Canister*'s rationale was not consistent with *Flores*'s analysis, *Johnson* nevertheless observed *Canister*'s outcome was "arguably correct" because "(1) the negligent performance of tasks requiring no medical skill or training may nonetheless implicate professional medical services and trigger the application of MICRA [citation]; and (2) the EMT's who allegedly operated an ambulance without due care were rendering professional services at the time and their failure to do so competently caused the officer's injuries." (*Johnson,* at pp. 161-162.) Here, Breda, who allegedly operated his vehicle with negligence, was rendering professional services (transporting a patient to the hospital) at the time; and his failure to do so competently caused Lashinsky's injuries. *Johnson* supports the conclusion that section 340.5 applies in this case.

Finally, Lashinsky argues her claim sounds in ordinary negligence: "Breda's EMT license does not give him the authority to drive an ambulance and it is not a privilege granted by his professional licensing agency. Therefore, driving an ambulance should not be considered to be part of

13

rendering professional services by an EMT." Lashinsky further makes this policy argument: "The insurance policy at issue provides commercial automobile coverage, not professional liability coverage. In this case, [ ] Breda is insured by . . . a casualty insurance company . . . that is not authorized to sell professional liability insurance. . . . Given the insurance industry recognizes that driving an ambulance is a casualty risk related to the ownership and use of an automobile, not a risk associated with professional liability, the court should follow their lead." Lashinsky urges us to adopt this bright line rule: "The negligent operation of a motor vehicle, even an ambulance, should always be considered incidental to providing medical care and be classified as ordinary negligence."

Lashinsky points to nothing in MICRA's plain language that supports her position. We agree with the *Canister* court's observation that EMT's are not automatically excluded from MICRA's reach: "Our Supreme Court has applied the provisions of MICRA to an action against an ambulance company brought by an inmate injured while being transported from the prison to a hospital. (*Belton v. Bowers Ambulance Service* (1999) 20 Cal.4th 928.) In *Belton,* neither party disputed that the defendant ambulance company was a health care provider within the meaning of MICRA. The court itself felt no need to address whether the transportation of a prisoner to a hospital by an ambulance fell within MICRA and held that the one-year limitations period of [ ] section 340.5 would bar the action unless some other provision extended the time." (*Canister, supra,* 160 Cal.App.4th at pp. 402-403.) Lashinsky's policy arguments that the statute should have been written as she interprets it are more appropriately directed to the Legislature. (See *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1112 [Policy arguments are " 'best directed to

14

the Legislature, which can study the various policy and factual questions and decide what rules are best for society. Our role here is to interpret the statute[s] [as they are written], not to establish policy. The latter role is for the Legislature.' "].)

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.