Filed 3/15/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| UBALDO LOPEZ et al.,<br><br> Plaintiffs and Appellants,<br><br>v.<br><br>AMERICAN MEDICAL RESPONSE WEST,<br><br> Defendant and Respondent. | A161951<br><br>(Alameda County<br>Super. Ct. No. RG18928042) |

Plaintiffs Ubaldo Lopez and Leobardo Lopez allege they were injured on August 28, 2017, while Leobardo was being transported in an ambulance operated by employees of defendant American Medical Response West (AMR), and the ambulance collided with another vehicle.[1] Plaintiffs filed their complaint on November 8, 2018, alleging motor vehicle negligence and medical malpractice. They appeal from summary judgment in favor of AMR based upon the one-year statute of limitations applicable to actions for professional negligence by health care providers under the Medical Injury Compensation Reform Act (MICRA). (Code Civ. Proc., § 340.5.)[2] The appeal turns on two questions: (1) whether MICRA applies when ambulance passengers are injured during a collision; and (2) if so, whether the statute of

---

[1] For clarity, when referencing plaintiffs individually, we use their first names only and intend no disrespect.

[2] All statutory references are to the Code of Civil Procedure unless otherwise stated.

limitations was extended under section 364, subdivision (d) because plaintiffs sent AMR a notice of intent to sue on August 23, 2018. We agree that the trial court correctly determined that the MICRA statute of limitations under section 340.5 applies and that plaintiffs' August 23, 2018 letter did not extend the statute of limitations because their prior March 2018 letter to AMR's third party claims administrator constituted a section 364, subdivision (a) notice of intent to sue.[3]

## FACTUAL AND PROCEDERUAL BACKGROUND

### I. *Accident and Notice Letters*

On August 28, 2017, while Leobardo was being transported in an AMR ambulance, accompanied by Ubaldo, the ambulance was involved in a collision. On March 23, 2018, plaintiffs' counsel sent a letter to Carlton Rollins at Sedgwick Claims Management Services, Inc. (Sedgwick Claims), which was the third party claims administrator for AMR. The March letter lists the plaintiffs' names, AMR as the insured, the date of the accident, and the claim number. It states: "Our clients have completed treatment for injuries sustained as a result of the above-referenced accident. We would like to explore the possibility of settlement. It would be in everyone's interest to avoid the delay and expense of litigation. The following sets forth facts regarding the accident and treatment, our evaluation of our clients' claims, and our demand for settlement." The March letter further states that the accident occurred while plaintiffs were passengers in defendant's

---

[3] Section 364, subdivision (a) precludes a plaintiff from filing a professional negligence action against a health care provider unless the plaintiff has given the health care provider 90 days' notice "of the intention to commence the action." Section 364, subdivision (d) tolls the statute of limitations for 90 days if the notice of intent to sue is served on the health care provider within the last 90 days of the applicable statute of limitations.

ambulance—Leobardo on the gurney and Ubaldo secured with a lap belt while accompanying his father. It references personal injury caused by AMR and states AMR is responsible for plaintiffs' damages. The letter then details the injuries, treatment, and other damages sustained by each plaintiff and references enclosed supporting documentation. It concludes with a settlement demand of $150,000 on behalf of Ubaldo and $11,467 on behalf of Leobardo and requests a response within 15 days.

On August 23, 2018, plaintiffs' counsel sent a letter directly to AMR with a copy to Rollins at Sedgwick Claims, stating that he was providing notice under section 364 of plaintiffs' intent to file a lawsuit against defendant for injuries sustained on August 28, 2017. The August letter, again, stated that plaintiffs were being transported in the ambulance when it was involved in a collision. It further stated that defendant and its employees failed to safely operate the ambulance and caused the collision resulting in injuries to plaintiffs.

## II.    *Complaint*

On November 8, 2018, plaintiffs filed their complaint, alleging motor vehicle negligence and medical negligence. Following a demurrer, plaintiffs filed a first amended complaint alleging the same causes of action.

## III.    *AMR's Motion for Summary Judgment*

AMR moved for summary judgment based upon section 340.5's one-year statute of limitations. The trial court granted the motion, finding that the declarations from the emergency medical technicians (EMT) established that they were certified EMT's at the time of the accident and that the accident occurred while plaintiffs were being transported to a hospital in defendant's ambulance. Relying on *Canister v. Emergency Ambulance Service, Inc.* (2008) 160 Cal.App.4th 388, 404–405 (*Canister*), the trial court

3

found that plaintiffs' claims were subject to MICRA. It further found that plaintiffs' March 23, 2018, letter to AMR's third party claims administrator, Sedgwick Claims, was a notice of intent to sue required under section 364 because it provided the information referenced in subdivision (b). Thus, based upon *Kumari v. The Hospital Committee for the Livermore–Pleasanton Areas* (2017) 13 Cal.App.5th 306 (*Kumari*), plaintiffs' subsequent August 23, 2018 letter did not extend the August 28, 2018, deadline to file suit under section 364, subdivision (d).

## DISCUSSION

Plaintiffs argue for reversal because: (1) AMR failed to establish that Bianca Andrade (Andrade) and Esteban Zuniga (Zuniga) were certified EMT's at the time of the incident and therefore the trial court erred in finding MICRA applicable; (2) MICRA does not apply to medical providers involved in vehicular collisions while operating ambulances; and (3) the one-year statute of limitations was tolled under section 364, subdivision (d) because plaintiffs served AMR with a notice of intent to sue letter on August 23, 2018, which was within 90 days of the applicable statute of limitations.

## I. *Summary Judgment Review*

A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A defendant satisfies this burden by showing " 'one or more elements of' the 'cause of action' . . . 'cannot be established,' or that 'there is a complete defense' " to that cause of action. (*Ibid.*) " 'Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause

4

of action or a defense thereto.' " (*Id*. at p. 849.)  We review the grant of summary judgment de novo, and in doing so, we view the evidence in the light most favorable to the losing party.  (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.)  Accordingly, we will "liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor."  (*Ibid*.)

## II.    *Legal Principles*

"A special statute of limitations applies . . . to actions 'for injury or death against a health care provider based upon such person's alleged professional negligence.'  (Code Civ. Proc., § 340.5 . . . .)  Unlike most other personal injury actions, professional negligence actions against health care providers must be brought within 'three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first.'  (*Ibid*.)"  (*Flores v. Presbyterian Intercommunity Hospital* (2016) 63 Cal.4th 75, 79 (*Flores*).)  The current version of section 340.5 was amended as part of MICRA.  (*Id*. at p. 81.)

"Section 364 precludes a plaintiff from filing a professional negligence action against a health care provider unless the plaintiff has given the health care provider 90 days' notice 'of the intention to commence the action.'  (§ 364, subd. (a); [citation].)  'No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered.' (§ 364, subd. (b).)  Section 364, subdivision (d) tolls the statute of limitations for 90 days if the notice of intent to sue is served on the health care provider within the last 90 days of the applicable statute of limitations.  [Citation.]

5

The purpose of section 364 and the 90-day waiting period 'is to decrease the number of medical malpractice actions filed by establishing a procedure that encourages the parties to negotiate "outside the structure and atmosphere of the formal litigation process" ' [citations]." (*Kumari, supra,* 13 Cal.App.5th at p. 312.)

## III. *MICRA's statute of limitations applies to plaintiffs' claims.*

### A. The trial court did not err in overruling plaintiffs' objections to the declarations of Andrade and Zuniga attesting to their EMT certifications.

Although the granting of summary judgment is subject to independent review, courts generally review evidentiary rulings on summary judgment for abuse of discretion. (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 657.) However, there is some question as to whether a de novo standard should apply to evidentiary rulings made solely on summary judgment papers. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 [recognizing question but declining to address it].) But under either standard, "evidentiary questions at summary judgment ' "are subject to the overarching principle that the proponent's submissions are scrutinized strictly, while the opponent's are viewed liberally." ' " (*Mackey*, at p. 657.) As discussed *post*, we find that even under a de novo standard, the trial court correctly overruled plaintiffs' evidentiary objections to the declarations of Andrade and Zuniga.

Plaintiffs argue the trial court erred in finding that AMR established that Andrade and Zuniga were certified EMT's at the time of the accident. AMR submitted declarations from Andrade and Zuniga in which they each attested that they were certified EMT's employed by AMR and that they were transporting patient Leobardo with Ubaldo in an ambulance when they were involved in a motor vehicle collision. The declarations provided each EMT's

certification number and stated that they had trained as EMT's and were active and certified EMT's at the time of the incident.

Plaintiffs offered no evidence to dispute these statements. Instead, they claimed the declarations were insufficient to prove the stated facts. Plaintiffs filed evidentiary objections to the portions of the declarations verifying each EMT's training and certification status, and plaintiffs argued that based upon the secondary evidence rule (Evid. Code, §§ 1521, 1523), AMR was required to provide "the actual EMT certificate[s]."[4] They make the same argument on appeal. Plaintiffs' evidentiary objections cited *Continental Airlines, Inc. v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 416 (*Continental Airlines*), for the position that a witness may not testify to the contents of a document not admitted into evidence, and *Hoover Community Hotel Development Corp. v. Thomson* (1985) 167 Cal.App.3d 1130, 1136–1137 (*Hoover*), and *McIvor v. Savage* (1963) 220 Cal.App.2d 128, 134 (*McIvor*), for the position that declarations containing conclusory statements should not be admissible.

AMR argued that the declarations established each declarant's EMT certification and training based upon direct testimony. AMR also stated that actual "certificates" do not exist and that EMT certification verification is available through the Emergency Medical Services Authority EMS Registry

---

[4] Plaintiffs also objected based on hearsay (Evid. Code, § 1200); lack of foundation (Evid. Code, §§ 400–406, 700); and improper opinion, conclusion, and speculation (Evid. Code, §§ 800, 802, 803). In their opening brief, plaintiffs state that they objected on these other grounds, but they do not provide any argument or authority supporting a claim that the declarations were inadmissible based on these other grounds. Thus, we do not address them. (*City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1302 ["When points are perfunctorily raised without adequate analysis and authority, we may treat them as abandoned or forfeited"].)

Web site. The trial court overruled plaintiffs' evidentiary objections, finding that plaintiffs failed to provide authority supporting their position.

On appeal, plaintiffs argue the trial court erred because plaintiffs' objections cited to authority. However, the case law plaintiffs cited in their written evidentiary objections does not support their position. *Continental Airlines, supra*, discusses the extent to which an expert witness may testify to the hearsay contents of a report on which he or she relied. (216 Cal.App.3d at pp. 414–416.) Here, Andrade's and Zuniga's declarations were based on their personal knowledge of their own backgrounds, training, and certifications. They offered no expert opinions. *Continental Airlines*, to the extent it even states current law regarding admissibility of expert testimony (see *People v. Sanchez* (2016) 63 Cal.4th 665), is inapplicable here. *Hoover, supra*, found that declarations containing "bald conclusions of law," personal opinions, and statements "whose credibility has been destroyed by prior admissions or other conclusive evidence" are not sufficient to create triable issues of fact. (167 Cal.App.3d at pp. 1136–1137.) Similarly, *McIvor, supra*, provides that declarations stating conclusions of law do not raise triable issues of fact. (220 Cal.App.2d at p. 134.) None of these cases supports plaintiffs' contention that an actual EMT certificate must be admitted into evidence to establish the fact that an individual is a certified EMT.

The declarations at issue here did not state opinions or conclusions of law. They attested to facts within the declarants' personal knowledge and are sufficient proof of the stated facts. (Evid. Code, § 411 ["Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact"].) That the moving party's evidence is to be strictly construed in determining whether it disproves an essential element of a plaintiff's claim does not mean that the

moving party must provide what would amount to cumulative evidence to prove a particular fact. The trial court correctly found that plaintiffs provided no support for their contention that the Andrade and Zuniga declarations are insufficient to prove the facts stated therein.

**B.** **Transporting a patient by ambulance falls within "professional services" under section 340.5.**

Plaintiffs argue the trial court erroneously followed *Canister*, which they assert has been "essentially overturned . . . ." As the trial court found, *Canister* is directly on point. In *Canister, supra*, a police officer who was accompanying an arrestee in the rear of an ambulance was injured when the ambulance hit a curb. A licensed EMT was driving the ambulance, and a second EMT was attending to the arrestee. The Court of Appeal affirmed the trial court's determination that the officer's negligence action was subject to MICRA. (160 Cal.App.4th at pp. 392–394.) *Canister* first concluded that EMT's are health care providers under MICRA and, further, held that "as a matter of law, . . . the act of operating an ambulance to transport a patient to or from a medical facility is encompassed within the term 'professional negligence.' " (*Id.* at p. 404.) *Canister* also held that under section 340.5's definition of " 'professional negligence,' " "[t]he relevant test is not the degree of skill required, but whether the negligence occurred in the rendering of services for which a provider is licensed." (*Canister*, at p. 404.) *Canister* further found that "[a]n integral part of the duties of an EMT includes transporting patients and driving or operating an ambulance." (*Id.* at p. 407.) Here, plaintiffs were passengers in the ambulance—Leobardo as the patient and Ubaldo as the patient's companion, similar to the police officer in *Canister*—while the ambulance was transporting a patient. This case falls squarely within the holding of *Canister*.

9

We are not persuaded by plaintiffs' argument that *Canister* has essentially been overruled. Plaintiffs rely on the Supreme Court's decision in *Flores, supra*, 63 Cal.4th 75, in which the court addressed whether a claim by a hospital patient, who was injured when the rail on her hospital bed collapsed, was subject to MICRA's statute of limitations or the two-year statute applicable to claims of ordinary personal injury. (*Id.* at pp. 79, 84.) The Supreme Court found that the negligent act or omission occurred " 'in the rendering of professional services' " for purposes of section 340.5 and constituted professional negligence. (*Flores*, at pp. 79, 84.) The court agreed that MICRA is not limited "only to those specific tasks that require advanced medical skills and training" (*id.* at p. 85), but explained that the test as to whether an act or omission occurs " 'in the rendering of professional services' " is not "merely [whether] it violates a state licensing requirement . . . ." (*Id.* at p. 86.) *Flores* further explained that "the special statute of limitations for professional negligence actions against health care providers applies only to actions alleging injury suffered as a result of negligence in rendering the professional services that hospitals and others provide by virtue of being health care professionals: that is, the provision of medical care to patients." (*Id.* at p. 88.) Therefore, "if the act or omission that led to the plaintiff's injuries was negligence in the maintenance of equipment that, under the prevailing standard of care, was reasonably required to treat or accommodate a physical or mental condition of the patient, the plaintiff's claim is one of professional negligence under section 340.5." (*Ibid.*) The court concluded that Flores's injuries resulted from the hospital's alleged negligence in the "use or maintenance of equipment integrally related to her medical diagnosis and treatment" and which, therefore, was professional negligence for the purposes of section 340.5.

10

(*Flores*, at p. 89.) Notably, *Flores* does not mention—much less overrule—*Canister*.

Plaintiffs rely on two post-*Flores* Court of Appeal decisions which they contend criticize *Canister*. In *Johnson v. Open Door Community Health Centers* (2017) 15 Cal.App.5th 153 (*Johnson*), our colleagues in Division Four of the First Appellate District held that MICRA's one-year statute of limitations did not apply to a personal injury claim alleging that the plaintiff, a patient at a health care clinic, was injured when she tripped on a scale on her way out of the treatment room. (*Id.* at pp. 156, 160.) In reaching its conclusion, the court reasoned that Johnson was injured not during the provision of medical care but after her care was completed. (*Id.* at p. 159.) She alleged injury due to the clinic's act of putting the scale in a place where it posed a tripping hazard, which "implicat[ed] [the clinic's] duty to *all users* of its facility, including patients, employees, and other invitees, to maintain safe premises." (*Id.* at p. 160.) *Johnson* discussed *Canister* and concluded: "While the court's rationale, in *Canister*, does not comport with *Flores*'s analysis, the outcome is arguably correct, in that (1) the negligent performance of tasks requiring no medical skill or training may nonetheless implicate professional services and trigger the application of MICRA (*Flores, supra*, 63 Cal.4th at pp. 85–86); and (2) the EMTs who allegedly operated an ambulance without due care were rendering professional services at the time and their failure to do so competently caused the officer's injuries. [Citation.]" (*Johnson*, at p. 162.)

Although *Johnson* correctly stated that *Canister*—which was decided before *Flores*—did not apply the specific *Flores* analysis, we do not find that *Johnson* "explicitly criticiz[ed]" *Canister*'s holding. Rather, *Johnson* explained that *Canister*'s "outcome is arguably correct" based on the

guidelines of *Flores*.  (*Johnson, supra*, 15 Cal.App.5th at p. 162.)  We agree with *Johnson*'s analysis of *Canister* and find that because plaintiffs were injured while AMR was rendering professional services to plaintiffs (e.g., transporting Leobardo in an ambulance), their claims are subject to section 340.5.

Plaintiffs also cite to *Aldana v. Stillwagon* (2016) 2 Cal.App.5th 1, a Second District Court of Appeal decision, which plaintiffs claim "essentially overturned its prior decision in *Canister*."[5]  Although *Aldana* questioned whether *Canister*'s holding was correct in light of *Flores*, it found *Canister* factually distinguishable.  (*Aldana*, at pp. 7–8.)  *Aldana* held that a paramedic supervisor who negligently collided with another vehicle while traveling to observe and evaluate other EMT's was not engaged in providing " 'professional services' " at the time of the injury.  (*Id.* at p. 8.)  The supervisor was not providing care or transporting a patient when the collision occurred.  He was driving his employer's truck, not an ambulance.  Applying the *Flores* analysis to those circumstances, *Aldana* held:  "A paramedic's exercise of due care while driving is not 'necessary or otherwise integrally related to the medical treatment and diagnosis of the patient' [citation], *at least when the patient is not in the vehicle*.  Accordingly, MICRA does not apply . . . ."  (*Ibid.*, italics added.)  Here, both plaintiffs were passengers in the ambulance, which was being operated to transport Leobardo.  Thus, *Aldana*'s analysis does not apply to plaintiffs' claim.

We conclude that under the principles discussed in *Flores*, MICRA's statute of limitations applies to plaintiffs' claims because their alleged injuries occurred while the EMT's were rendering professional services by transporting plaintiffs in an ambulance.  Plaintiffs' injuries resulted from

---

[5] *Canister* was also decided by the Second District Court of Appeal.

12

AMR's alleged negligence in the "use or maintenance of equipment [the ambulance] integrally related to [plaintiff Leobardo's] medical diagnosis and treatment" and therefore was professional negligence for the purposes of section 340.5.  (*Flores, supra*, 63 Cal.4th at p.89.)[6]

## IV.   *The August 23, 2018 letter did not toll the one-year statute of limitations.*

Plaintiffs claim that the statute of limitations was tolled under section 364, subdivision (d) because their August 23, 2018 notice of intent to sue letter was sent within the last 90 days of the applicable statute of limitations. The trial court rejected plaintiffs' contention because they sent an earlier demand letter which the court found constituted a notice of intent to sue under the criteria in *Kumari*.  Thus, the second letter did not impact the statute of limitations.  (*Kumari, supra*, 13 Cal.App.5th at p. 315.)

*Kumari* held that a plaintiff's letter to a health care provider—which described the injury and the events giving rise to her "medical negligence" claim, the treatment she received for the injury, and the damages alleged; requested $240,000 within 20 days; and concluded, "I personally do not wish to go through the legal route, but if this doesn't work I will move to the court after 20 days"—constituted a notice of intent to sue under section 364. (*Kumari, supra*, 13 Cal.App.5th at pp. 309, 313.)  *Kumari* further held that plaintiff's counsel's second notice letter—which was served within 90 days of

---

[6] The fact that Ubaldo was not a patient does not change our analysis because the injury to both plaintiffs occurred while defendant was using the ambulance to transport Leobardo.  Section 340.5 applies to negligent acts or omissions "in the rendering of professional services" but does not require the services to have been performed for the plaintiff.  (§ 340.5; see *Canister, supra*, 160 Cal.App.4th at p. 407 [applying MICRA to claim by third party injured while defendant rendered professional services to another]; *Aldana, supra*, 2 Cal.App.5th at p. 8 ["MICRA is not limited to suits by patients"].)

13

the running of the statute of limitations and stated that it was "pursuant to . . . section 364," that the defendant's nurse's "negligent actions" caused Kumari's injuries, and that Kumari's husband had a loss of consortium claim—did not extend the statute of limitations. (*Kumari*, at p. 315, quoting *Bennett v. Shahhal* (1999) 75 Cal.App.4th 384, 390 ["[T]he tolling provision of section 364, subdivision (d) applies only to plaintiffs who have served their original notice of intent to sue within 90 days of the expiration of the applicable limitations period. The service of an early notice, as here, fully achieves the legislative objective of encouraging negotiated resolutions of disputes without the necessity of suit. A second notice is not required and would generally serve no purpose"].)

Plaintiffs argue *Kumari* is distinguishable because their March letter did not explain the legal basis for their claim, did not set a firm deadline for a settlement response, did not request preservation of evidence due to anticipated litigation, and was not sent directly to defendant, but only to Sedgwick Claims. We disagree that plaintiffs' March letter is meaningfully different from the letter at issue in *Kumari*.

Plaintiffs' March 23, 2018, letter stated plaintiffs were treated for "injuries sustained as a result of the above-referenced accident," which occurred when plaintiffs were passengers in "the ambulance when your driver struck another vehicle." Plaintiffs wanted to "explore the possibility of settlement . . . to avoid the delay and expense of litigation." The letter further stated plaintiffs' attorney, who "specializes in personal injury," investigated the accident and the investigation established that AMR (referred to as Sedgwick Claims's "insured") caused the accident and was responsible for damages. It provided details of each plaintiff's injuries, treatment, impairments, and other damages and concluded by proposing

14

settlement of $150,000 for Ubaldo's claim and $11,467 for Leobardo's claim and requesting a response within 15 days. We find the March letter sufficiently notified "the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered." (§ 364, subd. (b).) The fact that the March letter does not specifically refer to "negligence" or "medical malpractice" is not controlling. The letter explains that plaintiffs were riding in the ambulance with Leobardo "on the gurney" when the ambulance collided with another vehicle and that the defendant "cause[d] . . . the accident" and "is responsible for all damages caused by this accident." The March letter adequately explains the basis for liability.

Nor is there merit to plaintiffs' claim that their March letter does not constitute a section 364 notice because it did not clearly state that a lawsuit would follow if settlement were not reached and that it merely "mildly expressed the hope of settlement" rather than a settlement demand with a hard deadline. Similarly to the letter at issue in *Kumari*, plaintiffs' March letter expressed a clear desire to "avoid" litigation by settling. The very first paragraph of plaintiffs' March letter refers to a "settlement demand," and the letter concludes with a specific dollar amount and a request for a response within 15 days. This is not meaningfully different from the letter in *Kumari*. It is not a meaningful distinction that plaintiffs' March letter did not include a request to preserve documents. There is no requirement that such a request is necessary in a section 364 letter. (See § 364, subd. (b).)

Our colleagues in Division One of the First Appellate District recently published *McGovern v. BHC Fremont Hospital, Inc.* (2022) 87 Cal.App.5th 181, which also involved the question of whether a plaintiff's first letter to the defendant met the requirements of section 364, subdivisions (a) and (b).

15

(*McGovern*, at pp. 193–194.) *McGovern* concluded that the plaintiff's first letter did not comply with section 364 and could not be deemed a notice of intent to sue. (*McGovern*, at p. 195.) The court summarized the plaintiff's first letter as follows: "McGovern's March 9 letter is largely devoted to preservation of evidence; includes only a generalized reference to injuries; and contains no description of [plaintiff's] treatment, the damages sustained, nor any attempt to quantify those damages. It makes no settlement demand and does not state that suit will be filed in a specified period of time if the demand is not met. Instead, the letter states 'this office will be gathering more necessary information.' " (*Ibid.*) In contrast, the letter here begins by stating, "This accident has been investigated by our office," and then details the accident, each plaintiff's injuries and treatment, and other itemized damages, including wage loss and pain and suffering, before concluding with a settlement demand and requesting a response within 15 days. The letter at issue here is more than an initial investigatory letter as was the one at issue in *McGovern*. It provided defendant with all the necessary information required by section 364. (*Kumari, supra*, 13 Cal.App.5th at p. 314.)

Finally, plaintiffs claim the March letter cannot be a valid section 364 notice of intent to sue because it was not sent directly to defendant AMR but, rather, to Sedgwick Claims, whom plaintiffs describe as "[AMR]'s insurance carrier." AMR's motion was supported by the declaration of Carlton Rollins, who declared he was a claims examiner at Sedgwick Claims, which was AMR's "third party claims administrator." Rollins declared that he was responsible for adjusting plaintiffs' claim and that he received the March letter "as the agent" of AMR.

In response to AMR's separate statement of undisputed facts, plaintiffs did not dispute that Sedgwick Claims was the third party administrator for

AMR for adjusting liability claims or that Rollins handled plaintiffs' claims. They claimed to dispute AMR's statement, supported by Rollins's declaration, that "Mr. Rollins received the First Letter, dated on or about March 23, 2018, as AMR's agent; he considered the First Letter claim-related correspondence since it contained the claims number(s)." However, the only evidence plaintiffs offered to support a factual dispute was the letter itself and their additional material fact, which simply stated that the March letter "was not sent to Defendant AMR, but rather to its insurance carrier Sedgwick Claims." Thus, the only evidence before the trial court on the issue of whether Rollins acted as AMR's agent with respect to plaintiffs' claim was Rollins's declaration explaining his role as AMR's third party claims administrator. Plaintiffs admitted Sedgwick Claims was AMR's third party claims administrator, and they failed to present any evidence to rebut Rollins's statement that he received the March 2018 letter as AMR's agent. Thus, there was no triable issue of fact as to whether Rollins (and Sedgwick Claims) acted as defendant's agent at the time Rollins received the March 2018 letter.

"[C]ourts have recognized that the purpose of the Act [MICRA]—effectuating prelitigation settlements—can only be achieved through actual notice. . . . [T]he language of the Act does not require actual notice, [and] 'the test is whether plaintiff took adequate steps to achieve actual notice.' [Citations.]" (*Selvidge v. Tang* (2018) 20 Cal.App.5th 1279, 1283–1284.) Here, plaintiffs' March 2018 letter, sent to Sedgwick Claims as the agent for defendant, meets this test. (Civ. Code, § 2332 ["As against a principal, both principal and agent are deemed to have notice of whatever either has notice

17

of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other"].)[7]

## DISPOSITION

The judgment is affirmed.

 

 

_____

Jackson, P. J.

WE CONCUR:

 

_____

Burns, J.

 

_____

Langhorne, J.*

 

A161951/*Lopez v. American Medical Response West*

---

[7] Under a final heading stating, "The Trial Court Committed Reversible Error Because the Court's Rulings Were Contrary to the Strict Mandates Applicable to Summary Judgment," the plaintiffs argue generally that they successfully disputed several of AMR's material facts, AMR failed to meet its burden of proof, and the evidence was not liberally construed in favor of plaintiffs. Although plaintiffs set out general principles applicable to motions for summary judgment and list by number the facts they claim "were all effectively and properly disputed," they do not provide a developed argument on any of these points. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt"].)

\* Judge of the Superior Court of Napa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A161951/Lopez v. American Medical Response West

Trial Court:         Superior Court of the County of Alameda

Trial Judge:        Stephen Pulido

Counsel:           Law Offices of Brian L. Larsen, Brian L. Larsen and Joseph Lee for plaintiffs and appellants.

Rankin, Shuey, Ranucci, Mintz, Lampasona & Reynolds, Maria M. Lampasona and Pamela B. Shafer for defendant and respondent.