# IN THE SUPREME COURT OF CALIFORNIA

FRANCISCO GUTIERREZ,
Plaintiff and Appellant,

v.

URIEL TOSTADO et al.,
Defendants and Respondents.

S283128

Sixth Appellate District
H049983

Santa Clara County Superior Court
20CV361400

July 31, 2025

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

GUTIERREZ v. TOSTADO

S283128

Opinion of the Court by Guerrero, C. J.

We granted review in this matter to decide whether the statute of limitations for medical professional negligence claims within the Medical Injury Compensation Reform Act (Code Civ. Proc., § 340.5)[1] applies to an action for negligence brought by the injured driver of a vehicle rear-ended by an ambulance transporting a patient. We hold that MICRA's statute of limitations does not apply under these circumstances.

Our holding follows from principles articulated in our previous decisions concerning the scope of MICRA's statute of limitations, as well as the general rule that the applicable limitations period depends on the nature of the right being sued upon. Where, as here, a plaintiff sues a health care provider for breach of a duty owed to the public generally, as opposed to a violation of professional obligations owed to patients, the two-year statute of limitations for general negligence claims (§ 335.1) applies. This conclusion is supported by MICRA's text, purpose, and legislative history, as well as relevant public policy considerations.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise noted. Hereinafter, section 340.5 is referred to as the MICRA statute of limitations, and the various provisions of the Medical Injury Compensation Reform Act are referred to more generally as MICRA.

1

Because the Court of Appeal concluded that the MICRA statute of limitations applies here, we reverse its judgment and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 20, 2018, Francisco Gutierrez (plaintiff) was driving his truck on a California highway when an ambulance driven by Uriel Tostado and operated by Tostado's employer, ProTransport-1, LLC (collectively, defendants), struck plaintiff's vehicle from behind. At the time of the accident, Tostado, a licensed emergency medical technician (EMT), was transporting a patient between regional medical centers; another EMT was attending to the patient in the back of the ambulance.

Plaintiff sued defendants on January 7, 2020, claiming the collision caused him to suffer neck and back injuries. He styled his complaint as a general negligence action involving a motor vehicle, resulting in personal injury and property damage.

Defendants moved for summary judgment on the ground that plaintiff's action was time barred under MICRA's one-year statute of limitations (§ 340.5). Plaintiff opposed the motion, maintaining his claim sounded in general negligence and was therefore timely under the two-year statute of limitations for general negligence claims (§ 335.1). The trial court granted defendants' motion for summary judgment, finding that the MICRA statute of limitations applied because, at the time of the accident, "Tostado was [a] health care provider employed by ProTransport . . . and was rendering professional medical services that were within the scope of services he was licensed to carry out."

Plaintiff appealed, and a divided Court of Appeal affirmed. (*Gutierrez v. Tostado* (2023) 97 Cal.App.5th 786 (*Gutierrez*).)

The majority reasoned that MICRA was "not limited to suits by patients or to recipients of medical services as long as the plaintiff is injured due to negligence in the rendering of professional services and his injuries were foreseeable." (*Gutierrez*, at p. 794.) A dissenting justice disagreed, arguing that the majority's view "extend[ed] MICRA's statute of limitations unpredictably and unfairly." (*Id*. at p. 795 (dis. opn. of Bromberg, J.).) According to the dissent, MICRA was not intended to reach "run-of-the-mill traffic accident[s]" such as this one, which should instead be governed by the two-year statute of limitations applicable to ordinary negligence claims. (*Gutierrez*, at p. 796 (dis. opn. of Bromberg, J.).)

We granted plaintiff's petition for review.

## II. DISCUSSION

To determine the reach of MICRA's statute of limitations provision, we begin by discussing general principles relating to statutes of limitations and statutory interpretation. Next, we turn to the text of section 340.5 and how we have interpreted its coverage of claims involving "professional negligence." Because the text of section 340.5 does not definitively resolve whether the statute applies here, we also consult MICRA's purpose and legislative history. We conclude from these interpretive resources that the MICRA statute of limitations extends only to claims deriving from the violation of an obligation owed by a health care provider in connection with the provision of professional services, as opposed to the breach of a duty that is more generally owed to the public at large. After applying our interpretation of section 340.5 to the facts of this case, we conclude that plaintiff's claim is premised on the breach of a duty owed to the general public. Therefore, the MICRA statute

of limitations does not apply here, and instead this action is subject to the two-year statute of limitations for general negligence claims. (§ 335.1.)

## A. General Principles

A "statute of limitations is a law that sets the maximum amount of time within which legal proceedings may be initiated." (*Shalabi v. City of Fontana* (2021) 11 Cal.5th 842, 844.) The general purpose of a statute of limitations is to "protect defendants from the stale claims of dilatory plaintiffs" and "to stimulate plaintiffs to assert fresh claims against defendants in a diligent fashion." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395.) "The statute of limitations operates in an action as an affirmative defense." (*Id.* at p. 396.)

The interpretation of a statute of limitations to ascertain its reach presents a question of law that we review de novo. (See *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 633–634.) " ' " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. . . . If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." ' " ' " (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190 (*Smith*).) However, " ' " ' "[i]f the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " ' " (*Ibid.*)

"To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the

cause of action, i.e., the 'gravamen' of the cause of action. [Citations.] '[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.' " (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22–23.)

### B. MICRA's Text

"MICRA . . . refers to several statutes that restrict or place conditions upon causes of action and remedies directed at 'health care providers' for 'professional negligence.' " (*Delaney v. Baker* (1999) 20 Cal.4th 23, 28, fn. 2.) The MICRA statute of limitations applies "[i]n an action for injury or death against a health care provider[2] based upon such person's alleged professional negligence." (§ 340.5.) The statute defines " '[p]rofessional negligence' " as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (*Id.*, subd. (2).) If MICRA applies, "the time for commencement of the action shall be three years after the date of injury or one year after the plaintiff

---

[2] Neither party disputes that Tostado, as an EMT, met the statutory definition of a "health care provider" under MICRA. (See § 340.5, subd. (1) [defining "health care provider" for purposes of the MICRA statute of limitations]; see also *Aldana v. Stillwagon* (2016) 2 Cal.App.5th 1, 7 (*Aldana*) [explaining that, under MICRA, "A 'health care provider' is 'any person licensed or certified pursuant to' various statutory schemes including, as relevant here, the Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act"]; see Health & Saf. Code, § 1797 et seq., *id.*, § 1797.4.)

discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (§ 340.5.)[3]

We examined MICRA's definition of "professional negligence" in *Flores v. Presbyterian Intercommunity Hospital* (2016) 63 Cal.4th 75 (*Flores*). In *Flores*, we considered whether MICRA's statute of limitations applied when the plaintiff, a hospital patient, sustained injuries upon falling out of her bed due to a malfunctioning guardrail. (*Flores*, at p. 79.) After reviewing MICRA's text, purpose, and legislative history, we concluded that MICRA's statute of limitations applied. (*Flores*, at p. 89.) Starting with the text, we observed that the statute's definition of " 'professional negligence' " contains four elements: "(1) 'a negligent act or omission to act by a health care provider in the rendering of professional services,' (2) 'which act or omission is the proximate cause of a personal injury or wrongful death,' (3) 'provided that such services are within the scope of services for which the provider is licensed,' and (4) 'which are not within any restriction imposed by the licensing agency or licensed hospital.' " (*Id.* at p. 84, quoting § 340.5, subd. (2).)

Focusing on the first element, we rejected as overly narrow the plaintiff's argument that " 'professional services' " only included services requiring a particularized degree of medical skill. (*Flores, supra,* 63 Cal.4th at pp. 84–85.) We noted, in this respect, that hospital staff might commit an act of negligence in the rendering of medical care, even where no special medical skill was implicated — for example, if a janitor's

---

[3]    Plaintiff appears to concede that, assuming MICRA applies at all, MICRA's delayed discovery rule, extending the limitations period up to three years (§ 340.5), did not expand his time to sue.

broom accidentally disconnected a patient's oxygen ventilator. (*Id.* at p. 85.)  We then rejected as overly broad the defendant's argument that " 'professional services' " encompassed *any* services performed by a health care provider within the scope of licensure, observing that this interpretation would collapse the first and third elements of section 340.5's definition of professional negligence.  (*Id.* at pp. 85–86.)  We also pointed out that because health care providers are licensed not only to perform medical services but also to operate public-facing facilities, the defendant's interpretation would improperly "sweep in not only negligence in performing the duties that hospitals owe to their patients in the rendering of medical diagnosis and treatment, but negligence in performing the duties that hospitals owe to all users — including personnel and visitors — simply by virtue of operating a facility that is open to the public."  (*Id.* at p. 86; see also *ibid.* [rejecting the notion that MICRA "would apply to a visitor's action for injuries resulting from a custodian's negligence in leaving a broom on a hallway floor, or a doctor's action against the hospital for failure to place a warning sign on a wet, recently mopped floor"].)  We disavowed such an "all-purpose rule covering essentially every form of ordinary negligence that happens to occur on hospital property." (*Ibid.*)

Upon rejecting the parties' starkly different positions, our decision in *Flores* concluded that "the special statute of limitations for professional negligence actions against health care providers applies only to actions alleging injury suffered *as a result of negligence in rendering the professional services that hospitals and others provide by virtue of being health care professionals:  that is, the provision of medical care to patients.*" (*Flores, supra,* 63 Cal.4th at p. 88, italics added.)  We further

explained, "[W]hether negligence in maintaining hospital equipment or premises qualifies as professional negligence depends on the nature of the relationship between the equipment or premises in question and the provision of medical care to the plaintiff. A hospital's negligent failure to maintain equipment that is necessary or otherwise integrally related to the medical treatment and diagnosis of the patient *implicates a duty that the hospital owes to a patient by virtue of being a health care provider.* Thus, if the act or omission that led to the plaintiff's injuries was negligence in the maintenance of equipment that, under the prevailing standard of care, was reasonably required to treat or accommodate a physical or mental condition of the patient, the plaintiff's claim is one of professional negligence under section 340.5. But section 340.5 does not extend to negligence in the maintenance of equipment and premises that are merely convenient for, or incidental to, the provision of medical care to a patient." (*Ibid.*, italics added.)[4]

---

[4] The analysis in *Flores* noted parallels between the MICRA statute of limitations and section 340.6, subdivision (a) (section 340.6(a)), an analogous statute governing actions against legal professionals. We found "instructive" (*Flores, supra*, 63 Cal.4th at p. 88) our prior decision in *Lee v. Hanley* (2015) 61 Cal.4th 1225, which addressed the scope of section 340.6(a). Similar to MICRA, section 340.6(a) imposes a one-year statute of limitations for "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services," subject to a delayed discovery rule. In *Lee*, a client sued her attorney for improperly withholding the client's funds. (*Lee*, at p. 1229.) We recognized that while the attorney's withholding of the funds may have violated certain professional obligations, the plaintiff's action could also be interpreted as a claim for simple conversion. (*Id.*

Elaborating on this distinction, we observed in *Flores* that hospitals are open to the public and include "numerous items of furniture and equipment . . . that are provided primarily for the comfort and convenience of patients and visitors, but generally play no part in the patient's medical diagnosis or treatment." (*Flores, supra,* 63 Cal.4th at p. 89.) We concluded that a defect in such equipment implicates a general duty of care owed to all Californians[5] and would not give rise to a claim for professional negligence. (*Flores,* at p. 89.) For instance, we explained, if "a chair in a waiting room collapses, injuring the person sitting in it, the hospital's duty with respect to that chair is no different

---

at p. 1230.) We also observed that "[t]he obligations that an attorney has by virtue of being an attorney are varied and often overlap with obligations that all persons subject to California's laws have." (*Id.* at p. 1238.) The test for determining whether section 340.6(a) applies to an action arising from conduct that violated overlapping duties, we concluded, was whether the action, "in order to succeed, necessarily depends on proof that an attorney violated a professional obligation as opposed to some generally applicable nonprofessional obligation." (*Lee,* at p. 1238.)

[5] A general negligence claim alleges a breach of the ordinary duty of care that each person owes to others. "The 'general rule' governing duty is set forth in Civil Code section 1714 . . . . [Citation.] First enacted in 1872, section 1714 provides: 'Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . .' (*Id.,* subd. (a).) This statute establishes the default rule that each person has a duty 'to exercise, in his or her activities, reasonable care for the safety of others.' " (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213–214; see also *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 716 ["Under general negligence principles . . . a person ordinarily is obligated to exercise due care in his or her own actions so as not to create an unreasonable risk of injury to others"].)

from that of any other home or business with chairs in which visitors may sit"; as such, MICRA's statute of limitations would "not apply to a suit arising out of such an injury." (*Flores*, at p. 89.) In contrast, because the plaintiff's malfunctioning bed guardrail, which had been ordered to be set at a certain height by the plaintiff's physician, was "integrally related to [the plaintiff's] medical diagnosis and treatment," we concluded the plaintiff's claim involved professional negligence, and therefore MICRA's one-year statute of limitations applied. (*Flores*, at p. 89.)

*Flores* thus perceived a fundamental distinction between claims involving "professional negligence" (§ 340.5) that are subject to the MICRA statute of limitations and claims involving only general negligence that are beyond the statute's scope. While the former "implicates a duty that the [defendant] owes to a patient by virtue of being a health care provider" (*Flores*, *supra*, 63 Cal.4th at p. 88), the latter implicates the general duty to exercise ordinary care that each person owes to all other members of the public (Civ. Code, § 1714, subd. (a)).

*Flores* did not have occasion to apply these principles in the context of a claim by a plaintiff who was not the patient of the defendant health care provider, but rather, a third party having no professional relationship with the defendant.[6] Our

---

[6] We recently addressed a third-party claim brought against a legal professional in *Escamilla v. Vannucci* (2025) 17 Cal.5th 571 (*Escamilla*). There, we held that section 340.6(a)'s one-year statute of limitations for claims against attorneys arising out of professional services did not apply to a malicious prosecution action brought against an attorney by a nonclient. (*Escamilla*, at pp. 576, 590.) However, *Escamilla* does not fully answer the

previous observations regarding the text of section 340.5, however, strongly suggest that there must be a nexus between the provision of medical care and the resulting injury. Although section 340.5 refers to claims by a "plaintiff" rather than a "patient," it applies only to actions "*for injury or death . . . based upon . . . professional negligence*," rather than a broader category of actions against health care providers. (Italics added.) In addition, section 340.5 specifically defines " '[p]rofessional negligence' " as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death." (*Id.*, subd. (2).) This circumscribed definition suggests the statute is only concerned with injuries resulting directly from the negligent *rendering* of medical care, as opposed to all injuries that might occur *during* or that *arise out of* the provision of medical care. (See *Flores*, *supra*, 63 Cal.4th at p. 85 ["the relevant professional service is medical care: that is, the medical diagnosis and treatment of patients"].)

Nonetheless, because section 340.5 may not be free from ambiguity, we consider MICRA's purpose and legislative intent to better inform our analysis. (*Smith, supra*, 11 Cal.5th at p. 190.)

---

question in this case. While we have previously regarded sections 340.5 and 340.6(a) as sister statutes, their text is not identical, and the nature of the claim raised in *Escamilla* involved different considerations than those presented in the instant case.

### C. MICRA's Purpose and Legislative History

*Flores* included a comprehensive discussion of the purpose and legislative history of MICRA. There, we explained that, for "most of the 20th century," medical malpractice claims were subject to a one-year statute of limitations, which was the same as the previously existing one-year statute of limitations for general negligence claims. (*Flores*, *supra*, 63 Cal.4th at p. 80, citing former § 340, subd. (3), as amended by Stats. 1905, ch. 258, § 2, pp. 231–232.) Subsequently, the courts began to adopt a "delayed discovery rule" for medical malpractice cases; that is, the limitations period did not begin to run until the plaintiff discovered, or through the use of reasonable diligence should have discovered, the plaintiff's injuries. (*Flores*, at p. 81.) In 1970, the Legislature enacted a statute of limitations specific to medical negligence claims to guard against " ' "open-ended" operation' " of the delayed discovery rule. (*Ibid.*) The 1970 statute provided that claims against specified medical professionals " 'based upon such person's alleged professional negligence . . . or for error or omission in such person's practice' " must be brought within one year of the plaintiff's discovery of the injury, "subject to an outer limit of four years after the date of injury." (*Ibid.*, quoting former § 340.5, added by Stats. 1970, ch. 360, § 1, pp. 771–772.)

Five years later, the Legislature enacted MICRA, a comprehensive package of legislative reforms intended to remedy the spiraling costs of medical malpractice insurance. (*Flores*, *supra*, 63 Cal.4th at p. 81.) The Legislature adopted several measures intended to have such an effect. These measures included amending the statute of limitations for medical negligence claims to: (1) shorten the outer limit for filing medical negligence claims from four years to three years;

(2) expand covered medical professionals to include additional categories of health care providers; (3) rephrase the description of covered actions to include any "action for injury or death against a health care provider based upon such person's alleged professional negligence"; and (4) add the definition of "professional negligence" that appears today. (§ 340.5.)

While MICRA's text refers to "professional negligence" rather than "malpractice," the manifest purpose of the legislation was to reduce costs associated with medical malpractice insurance. (See *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 111.) In convening an extraordinary legislative session to enact MICRA, then-Governor Edmund G. Brown proclaimed that the "cost of medical malpractice insurance has risen to levels which many physicians find intolerable." (Governor's Proclamation to Leg. (May 16, 1975) Stats. 1975, 2d Ex. Sess. 1975–1976, p. 3947; see also Stats. 1975, ch. 2, § 12.5, p. 4007 [preamble to MICRA; purpose of MICRA was to remedy "a major health care crisis in the State of California attributable to skyrocketing malpractice premiums"].) Consistent with this goal, MICRA's legislative materials reflect concerns regarding *malpractice* claims, not garden-variety negligence claims against health care providers. (See, e.g., Assem. Com. on Judiciary, Rep. on Assem. Bill No. 1 (2d Ex. Sess. 1975–1976) as amended June 6, 1975, pp. 1–3 [describing MICRA as effecting "malpractice" reforms, including amending the statute of limitations for "medical malpractice"]; Assem. Com. on Ways and Means, Analysis of Assem. Bill No. 1 (2d Ex. Sess. 1975–1976) as amended June 13, 1975, pp. 1–2 [describing MICRA as amending the "malpractice" statute of limitations]; Sen. Com. on Ins. and Fin. Institutions, Analysis of

Assem. Bill No. 1 (2d Ex. Sess. 1975–1976) as amended Aug. 11, 1975, p. 3 [same].)

In sum, although we have recognized that MICRA's reference to " 'professional negligence' " may not be "strictly limited to classic sponge-in-the-patient medical malpractice actions" (*Waters v. Bourhis* (1985) 40 Cal.3d 424, 432–433; see also *Flores, supra,* 63 Cal.4th at p. 85), containing the costs associated with traditional malpractice cases, including the insurance premiums associated with medical malpractice, was MICRA's core motivating principle.

Our understanding of MICRA's specific aims and accordingly limited reach informed our decision in *Flores.* As we explained in *Flores*, extending MICRA to claims for *any* injury sustained on a hospital premises would overshoot the Legislature's goal of reducing the cost of medical malpractice insurance. (*Flores, supra,* 63 Cal.4th at pp. 86–87.) We concluded that "[t]he text and purposes underlying section 340.5 . . . require us to draw a distinction between the professional obligations of hospitals in the rendering of medical care to their patients and the obligations hospitals have, simply by virtue of operating facilities open to the public, to maintain their premises in a manner that preserves the well-being and safety of all users." (*Id.* at p. 87.) We further observed that extending MICRA to claims arising from the breach of an ordinary duty of care may have actually been "counterproductive" to MICRA's purpose when it was enacted because the statute of limitations for general negligence claims

was also only one year at that time. (*Flores*, at p. 87, fn. 4.)[7] With the MICRA statute of limitations being "one year when the injury was or should have been immediately discovered, three years when discovery of the injury was delayed, and in some circumstances subject to tolling," "[t]o the extent that MICRA reflected legislative concerns about . . . skyrocketing malpractice rates, those concerns would have counseled against treating a garden-variety negligence claim as a claim for professional negligence." (*Flores*, at p. 87, fn. 4.)

This review of MICRA's purpose and history corroborates that in determining whether the MICRA statute of limitations applies, we look to whether the plaintiff's claim derives from *professional* obligations that are distinct from the duty to exercise ordinary care that is owed to the public generally. Where the plaintiff's claim is premised on the violation of a professional obligation owed in the rendering of a patient's medical care, treatment, or diagnoses, the claim sounds in professional negligence and the MICRA statute of limitations will apply. (See, e.g., *Nava v. Saddleback Memorial Medical Center* (2016) 4 Cal.App.5th 285, 292 (*Nava*) [MICRA applied when a patient was injured falling off a gurney, as "the alleged negligence in the use or maintenance of the gurney from which [the plaintiff] fell was integrally related to his medical diagnosis or treatment"]; see also *Mitchell v. Los Robles Regional Medical*

---

[7] In 2002, for reasons not relevant here, the Legislature lengthened the statute of limitations for general negligence claims from one to two years. (§ 335.1, added by Stats. 2002, ch. 448, § 2, p. 2522.) This legislative change had the "perhaps unintentional effect" of creating a longer statute of limitations for general negligence claims than for medical negligence claims. (*Flores, supra*, 63 Cal.4th at p. 82, fn. 2.)

*Center* (2021) 71 Cal.App.5th 291, 298–299 (*Mitchell*) [MICRA applied when a patient was injured walking to the restroom without a nurse escort, as the nurse's judgment that plaintiff did not need assistance implicated the nurse's professional duty to protect and ensure the comfort of the patient].) Where, in contrast, the alleged negligence does not implicate a specific professional obligation along the foregoing lines and violates only the duty of ordinary care owed to the general public, the claim does not involve professional negligence and the MICRA statute of limitations is inapplicable. (See, e.g., *Johnson v. Open Door Community Health Centers* (2017) 15 Cal.App.5th 153, 160 (*Johnson*) [MICRA did not apply when a patient tripped on a scale placed in an unsafe location in her doctor's office after her medical consultation concluded].)[8]

Under this rule, the absence of any professional duty owed directly to a plaintiff may shed light on the nature of that plaintiff's claim; however, it is nonetheless possible that a claim by a nonpatient plaintiff will sound in professional negligence, bringing the MICRA statute of limitations into play. As both parties note, several Court of Appeal decisions have applied various provisions of MICRA to claims by nonpatients. Many of these cases involved a plaintiff who was either the patient's heir (in cases involving claims of wrongful death) or the patient's spouse (in the case involving claims for loss of consortium), and the plaintiffs' claims flowed from the breach of a professional obligation that the health care provider owed to the patient in

---

[8]     We make note of *Nava*, *Mitchell*, and *Johnson* to illustrate the general principles set forth in this opinion but express no view as to whether these principles were correctly applied to the specific facts of those cases.

the first instance. (*Yates v. Pollock* (1987) 194 Cal.App.3d 195, 197, 199 [MICRA's damages cap[9] applied to wrongful death action by patient's spouse and children]; *Bell v. Sharp Cabrillo Hospital* (1989) 212 Cal.App.3d 1034, 1037, 1048–1052 [MICRA's damages cap applied to wrongful death action by mother whose minor son was the patient]; *Atkins v. Strayhorn* (1990) 223 Cal.App.3d 1380, 1394–1396 [MICRA's damages cap applied to loss of consortium claim by spouse of patient].)

This court also applied MICRA's statute of limitations to nonpatient claims in *Hedlund v. Superior Court* (1983) 34 Cal.3d 695, 703 (*Hedlund*), a case involving unusual facts. In *Hedlund*, a mother and son sued two psychiatrists whose patient shot the mother while the son was present. (*Id.* at p. 700.) We held the mother's claim sounded in professional negligence, because "the duty imposed on a therapist . . . to diagnose or recognize the danger posed by the patient" was "inextricably interwoven" with a duty to warn where the patient made threats to a "known victim." (*Id.* at p. 703.) We held the son had also stated a cause of action for professional negligence because "it was foreseeable that [the patient's] threats, if carried out, posed a risk of harm to bystanders and particularly to those in close relationship to [the mother]," and therefore the psychiatrists' duty to warn "extended" to the son. (*Id.* at p. 705.) However, we declined to decide "whether a duty exists as to all bystanders who might be injured" because "the foreseeability of such injury [wa]s not before us." (*Ibid.*)[10]

---

[9]     See Civil Code section 3333.2.

[10]     The underlying duty that *Hedlund* invoked has since been superseded in part by statute. (See Civ. Code, § 43.92, subds. (a) & (b).)

Thus, as explained above, the plaintiff's status as a patient or nonpatient is not necessarily determinative. Rather, the fundamental question is whether the plaintiff's claim for negligence involves a violation of professional obligations, as opposed to the breach of a duty owed to the public generally.

## D. MICRA Does Not Reach Plaintiff's Claim

Applying the foregoing principles, we conclude that the MICRA statute of limitations does not apply here, as plaintiff's claim stems from the breach of a general duty of care owed to the public.

Plaintiff does not allege that defendants were negligent in performing "medical diagnosis or treatment" of the patient whom they were transporting. (*Flores*, *supra*, 63 Cal.4th at p. 89.) Rather, plaintiff alleges that defendants were negligent in their failure to obey traffic laws applicable to all drivers on the road. Plaintiff's claim is akin to the example of the collapsing waiting room chair in *Flores*. (*Ibid*.) Like the hospital's duty to maintain the chair in good working order, defendants owed a duty to the general public to drive their ambulance with ordinary care under the circumstances. (See *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 774 ["the general duty to take ordinary care in the conduct of one's activities (Civ. Code, § 1714, subd. (a)) indisputably applies to the operation of a motor vehicle"].) In other words, defendants' duty to drive with ordinary care was not a duty owed "by virtue of being a health care provider" (*Flores*, at p. 88), but rather, a

duty owed simply by virtue of being a *driver*.[11]   As such, plaintiff's claim sounds in general negligence and falls outside of MICRA's scope.

In reaching a contrary conclusion, the majority opinion below relied on two cases applying MICRA to claims by nonpatients based on fact patterns somewhat similar to the one here:  *Canister v. Emergency Ambulance Service, Inc.* (2008) 160 Cal.App.4th 388 (*Canister*) and *Lopez v. American Medical Response West* (2023) 89 Cal.App.5th 336 (*Lopez*).  *Canister* held that MICRA applied to an action by a police officer who was injured while riding with a patient in an ambulance when it collided with another vehicle.  (*Canister*, at pp. 406–408.)[12] *Canister*, which predated *Flores*, reasoned that the EMTs operating the ambulance were rendering professional services to the patient when the collision occurred and that "courts have broadly construed 'professional negligence' to mean negligence occurring during the rendering of services for which the health care provider is licensed."  (*Canister*, at p. 406.)  Following *Canister*, *Lopez* held that MICRA's statute of limitations applied to claims by a passenger patient and his son who had

_____

[11]     The dissenting opinion below considered it significant that the ambulance here was not responding to an emergency situation.  (*Gutierrez, supra*, 97 Cal.App.5th at p. 796 (dis. opn. of Bromberg, J.).)   To be clear, while the existence of an emergency may affect what will constitute ordinary care, it does not fundamentally alter the fact that the ambulance driver's duty to other drivers is one of ordinary care.

[12]     *Canister* addressed the applicability of MICRA, not with respect to its statute of limitations, but in the context of another MICRA provision that allows defendants to introduce evidence of collateral payments made to the plaintiff. (*Canister, supra*, 160 Cal.App.4th at p. 392; see Civ. Code, § 3333.1, subd. (a).)

accompanied the patient during transport.  (*Lopez*, at p. 347 &
fn. 6; see also *id*. at p. 345 [noting, "This case falls squarely
withing the holding of *Canister*"].)

*Canister* and *Lopez* are in some tension with *Aldana,
supra*, 2 Cal.App.5th 1.  *Aldana* held that MICRA's statute of
limitations did not apply when a paramedic drove a supervisor's
truck to an emergency situation and got in a car accident with
the plaintiff en route.  (*Aldana*, at pp. 7–8.)  *Aldana* reasoned
that "[d]riving a nonambulance vehicle to the scene of an injured
victim is outside the scope of the duties for which a paramedic
is licensed," and therefore MICRA did not apply.  (*Aldana*, at
p. 8.)    Furthermore, applying *Flores*, the *Aldana* court
determined that "[a] paramedic's exercise of due care while
driving is not 'necessary or otherwise integrally related to the
medical treatment and diagnosis of the patient' [citation], at
least when the patient is not in the vehicle."  (*Ibid*.)  *Aldana*
recognized that "*Canister* concluded that both the EMT driving
the ambulance and the EMT attending the patient [in that case]
were rendering professional services."  (*Id*. at p. 7.)  On this
point, the *Aldana* court did not expressly disagree with *Canister*,
but observed, "[i]n light of *Flores*, it is questionable whether
[*Canister*'s] conclusion was correct."  (*Ibid*.)   In dismissing
*Aldana*'s relevance to the instant case, the *Gutierrez* majority
suggested that *Aldana*'s holding was limited to its facts.
(*Gutierrez, supra*, 97 Cal.App.5th at pp. 793, 795.)

We conclude *Canister* and *Lopez* were incorrect to the
extent they suggest that a plaintiff's claim sounds in
professional negligence merely because the plaintiff's injuries
"occur[ed] *during* the rendering of services" to a patient.
(*Canister, supra*, 160 Cal.App.4th at p. 406, italics added.)  For
MICRA's statute of limitations to apply, it is not enough that

there is a temporal connection between the plaintiff's alleged injuries and a health care provider's rendering of professional services. Rather, the alleged injury must be "suffered as a result of negligence in rendering the professional services that hospitals and others provide by virtue of being health care professionals." (*Flores*, *supra*, 63 Cal.4th at p. 88.) That is, the breach of the professional obligation must be the "proximate cause of a personal injury or wrongful death." (§ 340.5, subd. (2).) Here, plaintiff's injuries were allegedly caused by Tostado's negligent driving. As previously noted, this is not a "duty that the [defendant] owes to a patient by virtue of being a health care provider" (*Flores*, at p. 88); an ambulance driver owes *the general public* a duty to drive with ordinary care simply because they are operating a vehicle on a road.

Defendants would have us interpret MICRA more broadly. In their view, the ambulance transport here was "integrally related" to the provision of health care to the patient passenger (*Flores*, *supra*, 63 Cal.4th at p. 88) and, because plaintiff's injuries resulted from the ambulance transport, his claims should be covered by MICRA. Defendants misunderstand *Flores*. As previously discussed, in the context of a claim brought by a patient, *Flores* considered whether the malfunctioning bed guardrail at issue was "integrally related" to the patient's medical care. (*Flores*, at p. 89.) Based on a factual concession that her doctor had ordered the guardrail to be set a certain height, we concluded that the patient's "injuries . . . resulted from [the defendant's] alleged negligence in the use or maintenance of equipment integrally related to [the patient's] medical diagnosis and treatment"; therefore, MICRA applied. (*Flores*, at p. 89.) Here, no similar nexus exists between professional negligence, i.e., the breach of "a duty that

21

the [defendant] owes to a patient by virtue of being a health care provider" (*id.* at p. 88) and plaintiff's injuries as alleged in the complaint. Even if we assume the patient in this case was receiving medical services during the ambulance transport, there are no allegations suggesting that professional negligence in rendering those services was the proximate cause of plaintiff's injuries.

In this sense, plaintiff's claim is distinct from claims by a patient's relatives for wrongful death or loss of consortium based on medical negligence, or the claims by the foreseeable victims of the dangerous patient in *Hedlund*. In those cases, MICRA applied because the plaintiff's injuries were proximately caused by the breach of a *professional* obligation owed to a patient. For instance, in *Hedlund*, the plaintiffs' cause of action for failure to warn came within MICRA because the proper diagnosis of the patient was an element of the plaintiffs' cause of action. (*Hedlund, supra*, 34 Cal.3d at pp. 703–704.) We explained: "*Tarasoff* [*v. Regents of University of California* (1976) 17 Cal.3d 425 held] that diagnoses and predictions about the danger of violence presented by a patient must be rendered under accepted rules of professional responsibility, and that in so doing therapists must exercise the ' "reasonable degree of skill, knowledge and care ordinarily possessed and exercised by members of [the profession]." ' [Citation.] Diagnosis of 'psychological problems and emotional and mental disorders' is a professional service for which a psychologist is licensed, and a negligent failure in this regard is therefore 'professional negligence' as that term is defined in section 340.5. This diagnosis and prediction is an essential element of a cause of action for failure to warn. It is the basis upon which the duty to the third party victim is found." (*Id.* at p. 703.) Here, by

contrast, there is no professional failure that plaintiff must plead or prove to succeed on his personal injury claim.[13]

## E. Policy Considerations

In justifying its holding below, the *Gutierrez* majority reasoned, "Under [plaintiff's] proposed approach, two people involved in the same accident at the same time would be subject to two different statutes of limitations, possibly resulting in two separate lawsuits with inconsistent judgments and greatly increased costs for all involved." (*Gutierrez*, *supra*, 97 Cal.App.5th at p. 795.) The *Gutierrez* majority regarded this as an "untenabl[e]" policy outcome. (*Ibid*.) The dissent, drawing parallels between plaintiff's position and our holding in *Lee* (see fn. 4, *ante*), rejected this argument. The dissent explained: "The majority objects that it is impracticable to interpret MICRA's statute of limitations to depend on whether a claim requires proof that a professional obligation has been violated because claims by two people involved in the same accident at the same time might be subject to two different statutes of limitations. While it is true that claims by different people may be subject to different statute[s] of limitations, that is no reason to reject the *Lee* majority's approach. *Lee* itself recognized that under this

---

[13] Defendants acknowledged at oral argument that section 340.5 only applies to actions for "*injury or death* against a health care provider based upon such person's alleged professional negligence." (§ 340.5, italics added.) As such, by its own terms, section 340.5 would not apply to plaintiff's claim to the extent it involved property damage to his vehicle. The fact that section 340.5 does not reach property damage, which is commonly claimed in general negligence actions, further underscores that claims arising from a routine car accident — such as the one at issue in this case — sound in general rather than professional negligence.

approach claims brought by the *same* person concerning the same conduct may be subject to different statutes of limitations [assuming the person brings separate causes of action based on professional negligence and other theories]. [Citation.] As a consequence, it is neither impermissible nor impractical to interpret MICRA's statute of limitations so that claims involving the same conduct may be subject to different statutes of limitations if they are based on different theories." (*Gutierrez, supra*, 97 Cal.App.5th at p. 798 (dis. opn. of Bromberg, J.).)

We agree with the dissent. The possibility of different plaintiffs being subject to different statutes of limitation is neither unworkable nor inherently unfair.[14] A more obvious unfairness would result from defendants' proposed rule; that is, health care provider defendants would be afforded greater protection against an array of lawsuits than other types of defendants merely due to their identity as health care providers. In *Escamilla*, we "discern[ed] 'no policy reason in the legislative history [of section 340.6(a)] or elsewhere for providing a more circumscribed limitations period for attorney defendants than for client defendants of malicious prosecution actions.'" (*Escamilla, supra*, 17 Cal. 5th at p. 588.) This reasoning applies

---

[14] In making this observation, we do not opine on whether claims brought by the patient who was riding in the ambulance that struck plaintiff's vehicle in this case would be subject to a different statute of limitations than plaintiff's claim. That would depend on the specific facts alleged by the patient, and the nature of the duties or obligations involved, which are not issues before this court.

with equal force in the context of general negligence claims against health care providers.[15]

Nor are we persuaded by the argument of amici curiae California Medical Association, California Dental Association, and California Hospital Association (collectively, medical associations) that our holding would allow plaintiffs to avoid the MICRA statute of limitations through artful pleading. The medical associations express concern that plaintiffs could control which statute of limitations applies to their lawsuits simply by characterizing professional negligence claims as general negligence claims. Thus, according to the medical associations, it would be plaintiffs "who determine whether MICRA applies, even when plaintiffs are patients, even when defendants are health care providers, and even when defendants were engaged 'in the rendering of professional services' when plaintiffs were injured."

However, as we have explained, the applicable statute of limitations is not driven by a plaintiff's strategic choice of words but, rather, the substance of a plaintiff's allegations. "Under well established principles the applicable statute of limitations

---

[15] Defendants do not advance the additional policy argument, cited in the *Gutierrez* majority opinion, that a decision in plaintiff's favor could negatively impact medical malpractice insurance rates. (See *Gutierrez, supra,* 97 Cal.App.5th at p. 795.) In any event, we have not been provided any clear evidence of such potential impacts. The Insurance Commissioner, in an amicus curiae letter, explained that standard professional medical liability forms submitted by the Insurance Services Office "would not categorically cover traffic accident claims like the one in this case just because they involve a collision with an ambulance," but noted that individual policies may vary.

is determined by the *nature* of the right sued upon." (*Hedlund*, *supra*, 34 Cal.3d at p. 704, italics added.) Here, we hold that a plaintiff's claim sounds in general negligence, and not professional negligence, when it arises from a breach of a general duty of care owed to all members of the public. Whether such a breach is at issue will depend on the facts alleged in the complaint — not the terminology the plaintiff chooses to employ. A plaintiff's claim may sound in general negligence, even when the plaintiff is the patient (see, e.g., *Johnson*, *supra*, 15 Cal.App.5th at p. 160), even when the defendant is a health care provider, and even when professional services are being performed at the time the plaintiff is injured. But this is consistent with the aim of MICRA, which was designed to address the rising costs of litigation associated with *professional* negligence claims against health care providers — not *any* negligence claims against health care providers.

## F. The Two-year Statute of Limitations Under Section 335.1 Applies

Plaintiff's claim is not based on the breach of a professional obligation that defendants owed to the patient they were transporting in the ambulance that collided with plaintiff's vehicle. Plaintiff's claim arises instead from the alleged breach of the general duty of care that defendants owed to all other drivers to safely operate their ambulance on the road. Thus, the essence of plaintiff's action was not professional negligence but rather garden-variety negligence. As such, the two-year statute of limitations for general negligence claims applies (§ 335.1), and plaintiff's suit was timely filed.

### III. DISPOSITION

We conclude that the MICRA statute of limitations does not apply where, as here, the plaintiff's claim sounds in general negligence as predicated on the breach of a duty owed to the public generally.  On this basis, we reverse the judgment and remand this matter to the Court of Appeal for further proceedings consistent with our opinion.  We disapprove *Canister v. Emergency Ambulance Service, Inc.* (2008) 160 Cal.App.4th 388 and *Lopez v. American Medical Response West* (2023) 89 Cal.App.5th 336 to the extent they are inconsistent with our opinion.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Gutierrez v. Tostado

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 97 Cal.App.5th 786
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S283128
**Date Filed:** July 31, 2025

_____

**Court:**  Superior
**County:**  Santa Clara
**Judge:**  Christopher G. Rudy

_____

**Counsel:**

Southwest Legal Group, Anthony R. Lopez, Jr.; The Ehrlich Law Firm, Jeffrey I. Ehrlich; Law Offices of Clinton Ehrlich and Clinton E. Ehrlich-Quinn for Plaintiff and Appellant.

Ikuta Hemesath, Benjamin T. Ikuta, Michelle B. Hemesath and Janna M. Trolia for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, David V. Roth and Mark R. Wilson for Defendants and Respondents.

Cole Pedroza, Curtis A. Cole and Cassidy C. Davenport for California Medical Association, California Dental Association and California Hospital Association as Amici Curiae on behalf of Defendants and Respondents.

Rob Bonta, Attorney General, and Andrea M. Schoor-West, Deputy Attorney General, for Insurance Commissioner Ricardo Lara as Amicus Curiae, upon the request of the Supreme Court.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Clinton E. Ehrlich-Quinn
Law Offices of Clinton Ehrlich
120 Vantis, Suite 300
Aliso Viejo, CA 92656
(818) 473-5404

Mark R. Wilson
Manning & Kass, Ellrod, Ramirez, Trester LLP
101 Montgomery Street, Suite 2550
San Francisco, CA 94104
(415) 400-0829